## BARELLI V. LEVIN

[No. 1267A114. Filed May 28, 1969. Rehearing denied June 19, 1969. Transfer denied October 29, 1969.]

*Owen W. Crumpacker, Esq., Richard P. Koymatte, Esq., Crumpacker & Abrahamson,* all of Hammond, for appellant.

*Edmond J. Leeney, Esq., Galvin, Galvin & Leeney,* both of Hammond, for Appellee.

WHITE, J.—Appellant, then a married woman, employed appellee as her attorney in connection with a contemplated action for divorce. On a subsequent visit to appellee's office she and appellee executed the following instrument:

"October 14, 1965

"I hereby retain and employ Charles Levin as my Attorney to prosecute or settle all claims for damage against Dean R. Barelli or others who shall be liable on account of Divorce on or about the 14th day of October A.D. 1965. In consideration for services rendered and to be rendered I agree to pay my Attorney a sum equal to Fifteen (15%) per cent of whatever may be recovered from said claim either by suit, settlement or in any other manner.

"/s/ Anne Barelli

"I hereby agree to the above and further agree to make no charge for services unless recovery is had in above claim, and to make no settlement without consent of claimant.

"/s/ Charles Levin"[1]

Thereafter appellant was granted a divorce from her husband in an action in which appellee acted as her attorney. The divorce decree, entered pursuant to a property settlement agreement, made no order for fees to be paid to appellee as appellant's attorney as would appear to be the literal requirement of Indiana Acts of 1873, chapter 43, section 17, as amended by Indiana Acts of 1939, chapter 160, section 1, being also Burns Indiana Statutes Annotated, § 3-1216, which reads, in part:

"[O]n decreeing a divorce in favor of the wife or refusing one on the application of the husband, the court *shall*, by order to be enforced by attachment, require the husband to pay all reasonable expenses of the wife in the prosecution or defense of the petition includ-

---

1. There seems to be some dispute between the parties as to whether appellant employed appellee before or after they executed the fee contract. In some contingent fee contract cases that question could be significant. In this particular case, the disposition we make renders it irrelevant.

ing a reasonable sum for the services of the attorney representing such wife which sum for attorney fee shall be payable direct to said attorney and the order for same shall be in the name of said attorney, when such divorce has been granted or refused: . . ."[2] (Emphasis added.)

The divorce decree did, however, approve the settlement agreement which provided merely that appellant was to pay her own attorney's fee, without any reference to the amount thereof or to the contract with appellee. The decree also included an alimony judgment of $150,000.00 in appellant's favor, payable $50,000.00 immediately and the balance in 121 monthly installments of $825.00 each. Appellee filed an attorney's lien against that judgment. The ex-husband timely made payments pursuant to the judgment. The initial $50,000.00 payment was by check delivered to appellee. At appellee's request, appellant endorsed her ex-husband's check to appellee and accepted appellee's $42,500.00 check. The next six installments of $825.00 each were paid into the clerk's office. Because of appellee's lien appellant was able to obtain payment by the clerk to her only by first paying appellee $123.75 each month and obtaining from him a release for that month's installment. Thereafter appellant discontinued paying appellee for monthly releases and commenced this action to expunge appellee's lien. The action was filed in the same court (and was tried before the same judge) which had granted her the divorce. Her complaint prays for a declaration that the purported attorney's lien is void; for an order that it be released of record and expunged; and that appellee be permanently enjoined from placing any further lien against the alimony judgment. The appellee filed an answer admitting all allegations of the complaint except the allegation that the attorney's lien was void and should be expunged. He also filed a three-paragraph "cross-complaint", but dismissed the second and third paragraphs before judg-

2. This provision for a final fee for the wife's attorney (when the wife is successful) is in addition to the *pendente lite* fee provided for in the first sentence of the statute.

ment. The first paragraph alleges the 15% contingent fee contract, the services rendered, and summarizes the property settlement benefits to appellant alleged to be worth $194,000.00 thereby entitling appellee to a fee of $29,100.00, of which $20,857.50 remains unpaid. The "cross-complaint" prays judgment against appellant for that amount "and that he have a lien against said judgment for said amount". Appellant answered by admitting her employment of appellee and denying all other allegations. Appellant also answered affirmatively "[t]hat the contingent fee contract . . . is illegal and void."

Trial to the court, without jury, was followed on November 27, 1967, by the following entry of recitals, findings, and judgment:

## ORDER

"This cause, having been submitted to the court on the 30th day of June, 1967, on the complaint of the plaintiff and on the cross-complaint of the defendant, and the parties having filed their briefs, and arguments having been heard thereon, and the court being duly advised on the premises.

"Now Finds for the plaintiff and against the defendant on her complaint.

"The Court Further Finds that 'the plaintiff and the cross-complainant entered into a valid agreement for attorney fees on the 14th day of October, 1965', and that pursuant to said agreement the cross-complainant was entitled to receive and recover the sum of Twenty-Nine Thousand One Hundred and no/100 ($29,100.00) Dollars as attorney fees; that the plaintiff has paid the cross-complainant the sum of Seven Thousand Five Hundred and no/100 ($7,500.00) Dollars on April 4, 1966, and the further sum of One Hundred Twenty Three and 75/100 ($123.75) Dollars on March 8, 1966, April 18, 1966, May 5, 1966, June 13, 1966, July 6, 1966, and August 8, 1966; that the total sum of Eight Thousand Two Hundred Forty Two and 50/100 ($8,242.50) Dollars has been paid and that there is now due and owing the cross-complainant the sum of Twenty Thousand Eight Hundred Fifty Seven and 50/100 ($20,857.50) Dollars.

"It Is Therefore Ordered, Adjudged and Decreed that the lien filed by the defendant and cross-complainant in Cause No. C65-1343 entitled Anne Barelli vs. Dean R. Barelli be set aside and held for naught.

"It Is Further Ordered, Adjudged and Decreed that the defendant and cross-complainant have and recover a judgment from the plaintiff in the sum of Twenty Thousand Eight Hundred Fifty Seven and 50/100 ($20,857.50) Dollars.

"It is further ordered, adjudged and decreed that costs herein expended be paid by the defendant and cross-complainant."

Appellant timely filed a motion for new trial on several grounds including insufficiency of the evidence to sustain the decision and that it was contrary to law. Included in the memorandum is the contention that the contingent fee contract is void being against public policy. The overruling of that motion is the sole error assigned on appeal.

The evidence at the trial was the testimony of the parties which, without significant conflict, established the facts we have already recited. In addition there was testimony of the extent of the services rendered by appellee. Minimum fee schedules of several bar associations were also received in evidence. In each schedule introduced, divorce fees are stated in terms of the percentage of the amount recovered. The percentages range upward from a fixed minimum fee plus 5% of the first $60,000 (in the schedule suggested in 1965 by a committee of the Indiana State Bar Association) to a straight 25% (in the schedule of the Gary [Indiana] Bar Association) of the entire recovery. The schedule of the Hammond (Indiana) Bar Association, where appellee practices and where appellant employed him, calls for 15%. The Gary schedule states: "In divorces involving alimony judgment and/or property settlements, a contingent *agreement* of 25% of the amount of the judgment or the value of the property settlement is recommended by *agreement with client* (based on additional property gained or saved)." (Emphasis added).

No other schedule mentions a contingent fee *agreement* with the client. All schedules, including the Gary schedule, contain a section headed "Contingent Fee Cases". Such sections all begin with these words: "For representing a claimant or plaintiff in a claim or action *where representation on a contingent fee basis is proper* ...." (Emphasis added.)

The gist of appellee's counter action is that appellant is indebted to appellee by reason of the result obtained by appellee in appellant's divorce action pursuant to a contingent fee contract between appellant and appellee. The defenses made by the appellant were that the fee contract was void as against public policy; that the fee produced by the contract percentage is excessive and the conscience of the court will refuse to enforce it; and, that the amount of recovery is excessive in that it is based on an incorrect interpretation of the contract, because it includes a percentage of future installments of alimony and appellant's interest in the family home.

Appellant makes no contention that the contract is void for vagueness or ambiguity, but contends it is void because it violates public policy in that it tends to facilitate the granting of a divorce and discourages reconciliation. Appellee counters that it is not a contract to procure a divorce, that the contingency entitling appellee to the fee (i.e., the recovery of something for the wife) could have occurred without a divorce. And, in any event, appellee argues that *Draper v. Zebec*, 219 Ind. 362, 37 N. E. 2d 952 (1941), has held all contingent fee contracts between attorneys and clients to be valid.

The facts in *Draper* did not involve either a contingent fee contract or a divorce case. At issue there was the right of an attorney to prosecute proceedings supplementary to enforce a judgment he had purchased from a client. This involved the question: "Was the assignment of the judgment and cause of action to the appellant Draper champertous

and therefore void?" (219 Ind. at 371.) And since some contingent fee contracts are a type of champertous contract much of the discussion in the opinion involves the history of, and the modern view of the legality of, contingent fee contracts.

Not all contingent fee contracts, however, are champertous. They do not all provide (technically at least) for the attorney to receive a part of the recovery as his fee. Some, as in the case at bar, provide, not for a percentage of the recovery, but for *a sum equal to* a percentage of the recovery. As early as *Scobey v. Ross,* 13 Ind. 117 (1859), many jurisdictions had held contracts not champertous (and thus not void) which called for "a sum equal to a percentage of", rather than "a percentage of the recovery". The *Scobey* opinion seems to suggest that Indiana was then ready to join that group, but the contract in that case was one in which the client had promised to pay her attorneys for collecting a judgment "150 dollars *of* said judgment".

The public policy reason for making champerty a common law crime and champertous contracts void is not always mentioned in the early cases. When the public policy behind the rule is stated, however, it is usually said that such contracts tend to promote litigation and to multiply lawsuits. Even in the 1830's the Alabama Supreme Court acknowledged that "this reason may be less forceable now than in former times", but clung to it because "it is impossible to say that it is destitute of weight." *Holloway v. Lowe,* 7 Porter 488 (Ala. 1838), as quoted in *Scobey v. Ross,* 13 Ind. 117, 119 (1859). But the reason became destitute of weight in Indiana long before the courts were willing to frankly acknowledge, as our Supreme Court did in *Draper v. Zebec, supra* [219 Ind. at 376], that "persons who have rights, but no means to pursue them, are obliged to resort to this means [contingent fee contracts] of procuring legal redress".

None of the early cases, however, involve contingent fee contracts in divorce cases.[3] It is not until comparatively recently that we begin to find court opinions discussing the legality of contingent fee contracts in divorce cases. One of the reasons for a want of early divorce contingent fee contract cases may be that all contracts of married women were void. Neither contingent fee contracts nor any other contract of a married woman, could legally have operated as means whereby married women could have employed attorneys to seek legal redress against their husbands, no matter how grievous or reprehensible may have been the husband's conduct toward his wife nor how apparent may have been her grounds for divorce, alimony, or an adjudication of property rights. This incapacity of a wife to contract to pay her attorney a fee may well have been the primary reason for the 1873 statute (Acts 1873, ch. 43, § 17; Burns § 3-1216) quoted *supra*, which authorizes divorce courts to make *pendente lite* support and attorney fee orders in favor of the wife and enforceable against the husband by attachment, and requires a final attorney's fee order against the husband and in favor of the successful wife's attorney in a "reasonable sum". It was not until the Act of March 25, 1879 (Acts 1879, p. 160) that executory contracts of a married woman could be enforced. Thereafter, of course, a married woman could have contracted to pay an attorney a fee for prosecuting her action for divorce. But if she had then entered into a contingent contract whereby her attorney was to share in any alimony judgment he might recover for her, it could not be then said that she was obliged to resort to such an arrangement because she had no other means of employing an attorney to pursue her rights against her husband. She and her attorney could then have done what most married women and their attorneys now do. They could have agreed, tacitly or expressly, that the attorney's compensation

3. *Scobey v. Ross, supra,* [113 Ind. 117] involves a contract made *after* the divorce was granted.

would be fixed by the court and paid by the husband pursuant to the statute. The reason, therefore, for approving contingent fee contracts in ordinary damage suits does not exist in the case of a wronged wife seeking representation in a divorce action.

The want of any great necessity for contingent fee contracts in divorce cases is probably responsible for the fact that there are so few Indiana cases which mention them. The only Indiana case which makes more than a passing reference thereto is *Jordan v. Kittle,* 88 Ind. App. 275, 150 N. E. 817 (1926).[4] This case was decided two decades after *Whinery v. Brown,* 36 Ind. App. 276, 281, 75 N. E. 605 (1905), had said of an ordinary damage suit contingent fee contract:

> "While the propriety of contracts for contingent fees has been vehemently debated, yet, when such contracts are fairly made between counsel and clients, made in good faith and free from fraud or imposition, they are not illegal, and are as obligatory as between other parties. *It may and does happen that persons who have rights, but no means to pursue them, are obliged to resort to this means of procuring legal redress.* And it is the duty of the courts carefully to scrutinize such contracts to see that no improper advantage is taken either of the ignorance or necessity of those who enter into them, and if it appears that they are obtained by any undue influence of the attorney over the client, or by fraud or imposition, or that the compensation is clearly excessive, the party aggrieved will be protected. The fact that the practice of stipulating beforehand for professional fees, contingent on the result of the litigation, is sometimes abused, and exposes the profession to misapprehension and illiberal remark, is not sufficient excuse for refusing to enforce such a contract, when characterized throughout

---

4. The contract was not between the wife and her attorney. It was between the husband and the wife. It covered many matters including the husband's promise to pay his wife "for her use in the payment of her attorney's $100,000" which was to be held in escrow until after the end of the term of court at which she was granted a divorce on the ground of cruel treatment (and on no other grounds). It was, therefore, a *contingent* fee contract.

by 'all good fidelity to the client.' [Citations omitted.] (Emphasis added.)"

Notwithstanding the above statement by this court in 1905 about ordinary damage suit contingent fee contracts, we said in *Jordan v. Kittle, supra,* in 1926:

"The provision in this contract relating to the payment of attorneys' fees is sufficient in itself to condemn the contract as a whole. The law does not sanction or uphold contracts intended to promote divorce and contracts of that kind are held void against public policy. Any contract intended to or calculated to facilitate the obtaining of a divorce or to promote the dissolution of the marriage relation is illegal and void. A contract and deed of trust containing a stipulation that a divorce will be procured for the wife at her costs is void. *Rowe v. Young* (1916), 123 Ark. 303, 185 S. W. 438.

"An agreement by a woman to pay her attorney any part of the alimony recovered in a suit against her husband for divorce is against public policy and void. *McConnell v. McConnell* (1911), 98 Ark. 193, 136 S. W. 931, 33 L. R. A. (N. S.) 1074; *Jordan v. Westerman* (1886), 62 Mich. 170, 4 Am. St. 836; *Lynde v. Lynde* (1902), 64 N. J. Eq. 736, 52 Atl. 694, 97 Am. St. 692. As was said in *Jordan v. Westerman, supra:* 'Contracts like the one in question tend directly to prevent such reconciliation, and, if legal and valid, tend directly to bring around alienation of husband and wife by offering a strong inducement, amounting to a premium, to induce and advise the dissolution of the marriage ties as a method of obtaining relief from real or fancied grievances which otherwise would pass unnoticed.' "

The public policy considerations there expressed are completely in accord with the decisions throughout the United States[5] which have led the editors of American Jurisprudence, 2nd, to state without any qualification, condition

---

5. *McConnell v. McConnell,* 98 Ark. 193, 136 S. W. 931 (1911); *Newman v. Freitas,* 129 Cal. 283, 61 P. 907 (1900); *Sobieski v. Maresco* (Fla. App.) 143 So. 2d 62 (1962); *Re Sylvester,* 195 Iowa 1329, 192 N. W. 442, 30 A. L. R. 180 (1923); *Dannenberg v. Dannenberg,* 151 Kan. 600, 100 P. 2d 667 (1940); *Overstreet v. Barr,* 255 Ky. 82, 72 S. W. 2d 1014 (1934); *Lynde v. Lynde,* 64 N. J. Eq. 736, 52 A. 694 (1902); *Opperud v. Bussey,* 172 Okla. 625, 46 P. 2d 319 (1935).

or reservation: "A fee contract . . . contingent in amount on the amount of alimony to be obtained, is against public policy and void." 7 Am. Jur. 2d 173, *Attorneys at Law* § 217.

Appellee has cited *Krieger v. Bulpitt*, 40 Cal. 2d 97, 251 P. 2d 673 (1953), in which a contingent fee contract with a *husband* was held valid. By that contract the attorney was employed to *defend* a divorce action already commenced against him by his wife and the fee was to be a sum equal to ten percent of the property obtained for the husband. Appellee also relies on *State ex rel. Shannon v. Hendricks Circuit Court*, 243 Ind. 134, 183 N. E. 2d 331 (1962), in which the Supreme Court of Indiana prohibited the enforcement of a contempt citation against an attorney who held a divorce property settlement check payable to his client, the wife, claiming a lien for his fee. The majority opinion recites that relator represented the wife "on a contingent fee basis," (243 Ind. at 136) and further: "Relator not having been paid his fee for services rendered in the divorce action and in connection with the property settlement, retained possession of the certified checks and money which he received." (Id. at 137.) Nowhere in that opinion is it expressly stated that the "contingent fee basis" was a contract or agreement between relator and his client providing that he should be paid a stipulated percentage of the property settlement (or a sum equal thereto). The "contingent fee basis" could have been merely an understanding (tacit or express) between relator and his client that he was to have a fee fixed by the court pursuant to Burns § 3-1216,[6] which has been quoted, *supra*. But if

---

6. An attorney fee order as a part of a final judgment, if it followed the literal mandate of the statute, would have required the husband to pay the fee direct to the attorney, and would not have left it tied up in the wife's share of the sale of property. However, there is authority (*Smith v. Smith*, 217 Ind. 55, 26 N. E. 2d 41 [1940]) to the effect that the order, or judgment, should be payable to the wife. The dissenting judge (in the *Shannon* case) thought the writ of prohibition should have been denied because relator had not provided the court with a certified copy of the record on the divorce proceedings so that the court could have it "before us on the subject of attorney fees in the divorce proceedings." The judge was concerned because relator's response did not negate payment of fees by the husband.

there was a contingent fee contract in that case similar to the percentage contract in this case no one raised any question as to its validity. Respondent court and judge relied on Burns § 4-3615 (1946 Repl.) which is now § 4-7414 in the 1968 Replacement which requires an attorney to deliver on demand money or papers he has received in the course of professional employment or be punished for contempt, and on the fact that relator had not followed Burns § 4-7416 (1968 Repl.) to acquire his lien. The Supreme Court held only that attorneys have a retaining lien supplied by equity in addition to the statutory lien and that when such a lien is asserted contempt does not lie for refusal to pay over and the respondent court had no jurisdiction to issue a contempt citation. We cannot find that *Shannon's* case has ever been cited as authority that a contingent fee contract with a wife which provides that the attorney shall be paid a sum equal to a percentage of the alimony or property settlement is a valid contract.

It should be noted that when the courts began to hold contingent fee contracts (not involving divorce cases) valid, either because they were technically not champertous or because the court found they were necessary to enable impecunious persons to enforce their rights, the courts did not extend, and never have extended, their blanket approval to all contingent fee contracts. It is only "when such contracts are *fairly made* between counsel and clients, [are] made *in good faith* and [are] *free from fraud or imposition,* [that] they are not illegal, and are as obligatory as between other parties." *Whinery v. Brown, supra,* (36 Ind. App. at 281).

It may well be that a majority of the general public is no longer concerned with whether divorces are socially desirable or undesirable, or whether contracts that are designed to facilitate or promote the granting of divorces are valid. We are not yet ready to say, however, that it is no longer the public policy of the State of Indiana to

discourage divorces and to condemn contracts which discourage reconciliations and provide incentives to attorneys to obtain divorces. But even if we were inclined so to hold, there is no compelling reason, or necessity, for us to do so. No matter how destitute the wife may be, she does not need a contingent fee contract to enable her to employ an attorney. Her ability to employ an attorney is assured by the statute which empowers and requires the court[7] to order the husband to pay both a preliminary fee and a reasonable fee at the time he grants the wife a divorce. Thus there is no necessity, so far as the wife is concerned, for abandoning the rule that a contingent fee contract to pay an attorney a sum equal to a percentage of the alimony or property settlement recovered in a divorce action is contrary to public policy and therefore void.

Wives contemplating divorce are often distraught and without experience in negotiating contracts. Should contingent fee contracts between them and the attorneys they employ under such conditions become the usual fee arrangement, charges of overreaching and undue influence will be all too frequent. The public, the legal profession, and the bench would all suffer. We believe all will benefit by maintaining the present public policy of not enforcing such contracts no matter how freely and fairly entered into and how reasonable may be the fee thereby produced. The wise discretion of capable and experienced trial judges (aided by the evidence placed before them by the parties prior to the time the court fixes the fee to be paid by the husband) can be relied upon to assure every attorney an adequate fee and thus assure every wife adequate representation. Except in the uncommon

---

7. "There . . . must be read into the language of the statute a proviso to the effect that the court shall make the order provided for if a timely and proper application or petition is presented and the facts justify an allowance." *State, ex rel. v. Superior Court,* 216 Ind. 641, 643, 25 N. E. 2d 642 (1940).

case of the independently wealthy wife[8] there is but one source of compensation for the wife's attorney. Whether he is paid directly by the husband or by the wife from alimony and/or property settlement, the fund available for award to the wife is thereby reduced. When the trial judge himself fixes the fee he is then in a much better position to judge the fairness of any property settlement agreement or any property division or alimony award he must make without the aid of such an agreement. In fact, it is difficult to envision the exercise of sound judicial discretion in the approval of property settlement agreement when the judges are ignorant of the fees wives' attorneys will receive. The change of an occasional judicial under-valuation or over-valuation of an attorney's services would seem a small price to pay for the social advantages inherent in judicial control of wives' attorneys' divorce fees. And the same can be said of the occasional frustration of a wife unable to employ the attorney of her choice because of his unwillingness to trust the evaluation of his services to judicial discretion.

In holding that the fee contract in the case at bar is void, we are making no judgment as to its fairness or how it should be interpreted. It is void simply because it violates the public policy of this State. It violates the rule that all fee contracts between wives and their attorneys which measure the fee in terms of sums equal to percentages of "whatever may be recovered" in the prosecution or settlement of "claims for damage . . . on account of Divorce" are void. In our opinion that is what the contract in question provided for. And that, we hold, is the equivalent of contracting that the attorney will prosecute the wife's "claim" for divorce and will be paid

---

8. In such cases the attorney's compensation must of necessity come from a contract with the wife. If such a contract makes the payment of any part of the fee contingent upon a divorce being granted, public policy would condemn it. But that would not necessarily rule out every conceivable percentage agreement for the defense of the husband's divorce action and/or counter action.

a sum equal to a percentage[9] of the alimony and/or division of property he obtains for her incident to a divorce, whether by prosecution or by settlement. Any arrangement of words which, reasonably interpreted, conveys substantially that agreement violates public policy and is void when it constitutes a purported agreement between a wife and her attorney. As to agreements, contracts, and understandings between husbands and their attorneys we express no opinion and render no decision.

For the reasons stated, the judgment of the trial court, in so far as it relates to the prayer of appellee's counterclaim ("cross-complaint") is reversed and the cause is remanded with directions to enter judgment against the appellee and for the appellant on the appellee's counterclaim with judgment for appellant and against appellee for all costs laid out and expended by appellant in the court below. And, pursuant to statute, the costs of this appeal are assessed against the appellee.

Judgment on counterclaim reversed, with directions, at appellee's costs.

Pfaff, C.J., Hoffman and Sharp, J.J., concur.

NOTE—Reported in 247 N.E. 2d 847.

---

9. We agree with the opinion in *Draper v. Zebec, supra* [219 Ind. at 374] whether the contract is for a percentage of the amount recovered or for a sum equal thereto is "a distinction without a difference". The technical historical definition of champerty which made the former void and the latter valid has no relevancy to the public policy considerations which make wives' divorce fee contingent contracts void.