**Wade SHANKS, Plaintiff-Respondent,**

v.

**Fannie P. (Shanks) KILGORE,
Defendant-Appellant,**

and

**Harold L. Miller, Defendant-Respondent.**

No. 30023.

Missouri Court of Appeals,
Western District.

Oct. 1, 1979.

Rehearing Denied Oct. 29, 1979.

Snowden & DeCuyper, Joseph Y. DeCuyper, Hsiang-Lin Lee, Kansas City, for defendant-appellant.

Sevier & Burnett, Robert F. Sevier, Roger Guy Burnett, Liberty, for Shanks.

Harold L. Miller, Maysville, for defendant-respondent.

Before HIGGINS, Special Judge, Presiding, SWOFFORD, J., and WELBORN, Special Judge.

ROBERT R. WELBORN, Special Judge.

Interpleader arising out of dispute over attorney's fee. Trial court allowed fee and fee for stakeholder's attorney. Client appeals from both allowances.

Harold L. Miller represented Fannie P. Shanks, now Kilgore, in marriage dissolution proceeding with her husband, Wade Shanks, filed June 4, 1975 in the Clay County Circuit Court. A decree of dissolution was entered January 28, 1976. On the same date a property settlement agreement was entered into between the parties. It provided for the payment by Wade to Fannie of $300,000, with the first $100,000 (plus $1,380.60 child support payment) to be made within five days, the second $100,000 on February 1, 1977, and the third on February 1, 1978. The agreement provided for the payment by Wade of $4,279.20 to Fannie "as and for all attorneys fees due to her for the dissolution of the marriage, by check payable to the Wife and Harold L. Miller, her attorney."

According to Miller, on the morning of January 28, 1976, he explained the property settlement agreement to Fannie before it was executed by her. He told her that the court "might" allow an attorney fee to be paid by Wade, " * * * but that would only be for the dissolution action, and that her fee—the fee for the enforcing and obtaining of her property rights would be her separate expenses and would not be paid, in any event, by her husband." He told Fannie that his fee for his services in that regard would be $60,000, to be paid by paying him twenty per cent of each of the installments when, as, and if they were paid to her. According to Miller, Fannie agreed to this arrangement. By letter, addressed to Wade and his attorneys and signed by Fannie and Miller, dated January 27, 1976, the request was made that all payments due Fannie under the settlement agreement be made to Fannie and Miller, " * * * her attorney."

The first $100,000 was paid as per the settlement and Miller received $20,000 as his fee from the payment.

On June 25, 1976, Fannie, then residing in Broomfield, Colorado, addressed a letter to Miller: "This letter is to inform you I do not have any intentions of paying any more attorney's fees to you."

By letter dated July 6, Miller responded, stating, " * * * [W]e had an express agreement and understanding that our fee would be based upon 20% of the amount, received by you in the settlement. * * * [W]e will expect you to pay the remainder of the fee due to us, which is $40,000.00."

On September 21, 1976, Fannie addressed a letter to Wade and his attorneys, advising them that the previous authorization to make payments due under the property settlement to Fannie and Miller was revoked and that all payments should be made directly to Fannie.

On October 1, 1976, Miller wrote Wade and his attorneys:

"You are hereby advised and notified that pursuant to Section 484.130 and 484.140 of V.A.M.S., and pursuant to my agreement with Fannie Pearl Shanks, I have an attorney's lien upon the balance of the proceeds of the property settlement agreement by and between Wade Shanks and Fannie Pearl Shanks, in Case No. 48118, Division 3 in the Circuit Court of Clay County, Missouri, which property settlement agreement is dated January 28, 1976, and which attorney's lien attaches to and shall be paid when payments are made of the balance due upon that agreement under Section 1c and d of Schedule A, the first of which such payments shall be due and payable February 1, 1977 and the second of which shall be due and payable February 1, 1978, and each in the sum of $100,000.00, and further that said attorney's lien is 20% of those amounts due and payable."

On November 15, 1976, Wade filed his interpleader petition in the DeKalb County Circuit Court, admitting the indebtedness to Fannie under the settlement and setting forth the direction of Fannie to make future payment to her alone and Miller's notice of his claim of an attorney's lien. The petition sought direction for the portion that Fannie and Miller were entitled to receive of the payment due February 1, 1977 and February 1, 1978. Under an amended interpleader petition, Wade paid the amount of the 1977 and 1978 payments, less credits not here significant, into the registry of the court.

Miller answered, asserting an attorney's lien equal to 20% of the principal amounts owed by Wade. Fannie (by then Fannie Kilgore) answered, denying Miller's claim, and asserting that she did not know or understand the nature or extent of the alleged oral contingent fee contract relied upon by Miller, and that if she agreed to such a contract, "she did so * * * while under strong medication for physical injuries and that such agreement is void and unenforceable and is against and violates public policy." Fannie cross-claimed against Miller for the $20,000 he had received, but the cross-claim was later dismissed.

At the hearing of the case, Miller testified to his arrangement with Fannie for his fee. Fannie denied any such arrangement. She testified that she was taking medication at the time of the property settlement and disclaimed any recollection for the events surrounding its execution. She did say that Miller never told her that she owed him a fee, saying that Miller told her that he'd collect his fee from Wade.

The trial court rejected Fannie's testimony and found the facts as testified to by Miller. The trial court allowed Wade $1,613.75 for his attorney's fees in the interpleader, Miller $40,000, and ordered the balance paid to Fannie or for her account with others.

In this court, appellant, insofar as her appeal against Miller is concerned, relies upon the rule that a contract between an attorney and a client in a divorce proceeding calling for a contingent fee based upon a percentage of alimony or property settlement received in such proceeding is contrary to public policy and void. 7 Am. Jur.2d *Attorneys at Law*, § 217 (1963); 17 C.J.S. *Contracts* § 235 (1963). Appellant cites no Missouri authority where this rule has been applied. The Code of Professional Responsibility states: "Because of the human relationships involved and the unique character of the proceedings, contingent fee arrangements in domestic relation cases are rarely justified." Rule 4, Canon 2, EC 2–20.

The trial court in this case concluded that the fee arrangement between Miller and Fannie was not a contingent fee contract " * * * as that term is known and commonly used in the practice of law in Missouri." The trial court further found:

"18. It was not until after the Defendant, Kilgore had agreed to settle upon those terms that she was advised by the Defendant, Miller of the amount of her attorney's fees in such litigation and such advice was that she was to pay to the Defendant, Miller, as and for such fees, 20% of the payments made upon the sum of $300,000.00 'as, when and if payments were made thereupon to her by the Plaintiff.'

"19. One of the circumstances relied upon by Mrs. Kilgore to support her claim of a contingent fee contract is that the additional fee was to be paid one-third from each of the scheduled payments from Mr. Shanks. This fact can just as easily be attributed to Defendant, Miller's feeling that either further litigation might be necessary to effect payment or an unwillingness on his part to collect his entire fee and leave his client with an unpaid debt from her former husband. Defendant, Miller's testimony and the documentary evidence indicate that if Mr. Shanks failed to meet his obligation on the remaining payments due Mrs. Kilgore, Miller was willing to participate proportionately with her in the loss occasioned by the non-payment. Such losses to attorneys are frequently sustained."

Appellant attacks the court's findings of fact as against the weight of the evidence and its conclusions of law as inconsistent with the court's findings of fact. Insofar as the weight of the evidence argument is concerned, appellant relies upon statements of Miller in a deposition, to the effect that he had a contingent fee contract with appellant, the statement in the July 6 letter, quoted above, to the effect that his fee was "based upon 20% of the amount received by you in the settlement" and Miller's giving notice of his attorney's lien under Section 484.140 dealing with contingent fee contracts. Appellant asserts that these statements and acts were inconsistent with Miller's trial testimony of an agreed $60,000 fee, payable at the rate of 20% of each of the installments of $100,000.00.

Miller's characterization of the fee arrangement is not the decisive factor in this case. The question is whether or not the arrangement was, as a matter of law, of the nature which the law condemns. Miller's position basically is that there was no contingency because the amount of the fee was fixed at $60,000 after the decision to accept the $300,000 cash settlement was made. Appellant contends that even at that point, liability for the fee remained contingent upon payment of the installments by Wade and was also subject to the trial court's authority to approve or disapprove the settlement agreement. § 452.325, RSMo 1978.

As Miller points out, the cases from other states relied upon by appellant involved more or less traditional contingent fee arrangements, arrived at early in the employment of an attorney, with liability of the client dependent upon the outcome of the anticipated litigation and stated as a percentage of the sum awarded the client by way of alimony or property allowance. Appellant's authorities include *Succession of Butler*, 294 So.2d 512 (La.1974); *Sobieski v. Maresco*, 143 So.2d 62 (Fla.1962); *Barrelli v. Levin*, 144 Ind.App. 576, 247 N.E.2d 847 (1969); *McDearmon v. Gordon & Gremillion*, 247 Ark. 318, 445 S.W.2d 488 (1969); *Avant v. Whitten*, 253 So.2d 394 (Miss.1971). See 1 S. Speiser, Attorneys' Fees, § 2:6, p. 89 (1973).

Generally, these cases relied upon the public policy antagonistic to divorce and favorable to reconciliation and condemned the contingent fee arrangement because it gave the attorney an interest in avoiding reconciliation. See also *Baskerville v. Baskerville*, 246 Minn. 496, 75 N.W.2d 762, 768[6] (1956); *Burns v. Stewart*, 290 Minn. 289, 188 N.W.2d 760, 765–766[3] (1971). Some cases also emphasize the absence of necessity for contingent fee contracts in domestic relation cases in view of the power accorded the court to award attorney's fees. *Barrelli*. See also *Newman v. Freitas*, 129 Cal. 283, 61 P. 907, 910 (1900).

In the present case, the fee arrangement between Miller and Fannie involved at least three contingencies: First, that the court grant the requested dissolution of marriage (This contingency was not stated but was implicit in the arrangement.); second, that the court approve the property settlement agreement entered into by the parties, §. 452.325; and third, that Wade make the payments as agreed. Miller makes no contention that upon execution of the settlement agreement Fannie was bound in any event to pay him $60,000 for his services.

The policy considerations which would have condemned an arrangement under which at the outset of Miller's employment would have provided a fee of 20% of any cash property settlement are equally present in this case. Particularly, Miller's explanation to his client that the court would allow a fee for his services in the dissolution but that Fannie would be obligated to pay the fee in connection with the property settlement cannot be ignored. Settlement of property rights is an integral part of the dissolution proceeding and the court would have the right to include compensation for services in that respect in the fee which it is authorized to include in the cost to be paid by the other party. § 452.-355.

■ The trial court's conclusion of the law that there was no contingent fee contract in this case was erroneous. The timing of the fee arrangement was unusual

and the fact that the basis for its computation was considered established, eliminated the element of uncertainty in the amount to be exacted, but liability for the fee remained contingent and had not become fixed. The arrangement violated the prohibition against a contingent fee contract in a case such as this and the allowance to Miller cannot be upheld.

Fannie has appealed from the trial court's allowance of attorneys' fees to Wade, to be paid out of the fund. In view of the conclusion that Miller is not entitled to share in the fund, the costs of the proceedings including attorney's fee in the trial court would become his obligation. *Spicer v. New York Life Ins. Co.*, 237 Mo.App. 725, 167 S.W.2d 457, 468[5] (1942). Therefore, the appeal in this regard becomes moot. However, the appeal has been examined. It is insubstantial, being based to some extent upon obviously inapplicable authority. In view of the insubstantial nature of the appeal, one half of the costs on appeal plus a reasonable attorney's fee for services on appeal to be allowed Wade should be charged against the balance of the fund in the trial court, the balance of the costs on appeal to be assessed against respondent Miller. No damages will be awarded Wade. His motion for damages under Rule 84.19 is overruled as is the motion of Miller under such rule.

Judgment reversed as to claim of respondent Miller. Cause remanded to trial court with direction to enter new judgment, disallowing claim of respondent Miller for allowance from the funds deposited with the court; assessing the costs of the proceeding in the trial court, including $1,613.75 allowed as attorney's fees to plaintiff against respondent Miller; assessing the costs of this appeal, one half against respondent Miller and one half against appellant Fannie plus a reasonable attorney's fee to Wade for attorney's services on appeal, to be assessed against Fannie and paid from the balance of the fund in deposit in the trial court.

Reversed and remanded with directions.

All concur.