IN RE: FORECLOSURE OF DEED OF TRUST FROM MARY ANN COOPER TO CLAYTON S. CURRY, JR., TRUSTEE, DATED 9 JANUARY 1984, RECORDED IN BOOK 4779, PAGE 178, IN THE MECKLENBURG COUNTY REGISTRY, BY CLAYTON S. CURRY, JR., TRUSTEE

No. 8526SC272

(Filed 3 June 1986)

**Attorneys at Law § 7.1; Contracts § 6— equitable distribution—contingent fee contract not void as against public policy**

·A contingent fee contract covering services rendered in an equitable distribution action is not void as against public policy and is fully enforceable as long as it does not provide compensation to the attorney for securing the divorce. If an attorney represents a client in both divorce and equitable distribution actions, and the client wishes to have a contingent fee contract in the equitable distribution action, a separate agreement must be executed to provide for a fee in the divorce action that is not contingent upon the securing of the divorce.

APPEAL by respondent from *Burroughs, Judge.* Order entered 19 November 1984 in Superior Court, MECKLENBURG County. Heard in the Court of Appeals 16 October 1985.

*Wade and Carmichael, by J. J. Wade, Jr., for petitioner appellee.*

*Robert A. Karney, pro se, as respondent appellant.*

BECTON, Judge.

On 1 December 1982, David E. Cooper instituted a divorce proceeding against his wife, Mary Ann Cooper. On 28 December 1982, Mary Ann Cooper and Robert A. Karney, P.A., signed a contract of employment which provided in its entirety:

CONTRACT OF EMPLOYMENT

This is to acknowledge that I have retained the services of Robert A. Karney, P.A., as legal counsel to represent me in

the matter of: David E. Cooper vs. Mary Ann Cooper. The agreed attorney's fee to Robert A. Karney, P.A., for their representation in this matter is as follows:

Thirty-five percent of the gross recovery plus expenses

CSC
M.A.C.

This the 28 day of December, 1982.

s/ROBERT A. KARNEY          s/MARY A. COOPER
     Attorney                    Client

On 30 December 1982, Ms. Cooper filed an answer and counterclaim in the divorce action admitting all the allegations and seeking equitable distribution of the marital property. On 24 January 1983, a judgment of divorce was entered, ending the Coopers' marriage. For the next year, the Coopers engaged in litigation over their marital property under N.C. Gen. Stat. Sec. 50-20 (1984 & 1985 Supp.). On 12 January 1984, a final judgment by consent was entered.

After the equitable distribution proceeding, Ms. Cooper and Mr. Karney agreed that Ms. Cooper would pay Mr. Karney's fee, $6,790.00, according to an installment plan. The plan was incorporated into a promissory note secured by a deed of trust to Ms. Cooper's interests in the property that was formerly the Cooper's marital home. Ms. Cooper made only one payment on the note. After accelerating the note and receiving no further payment, Mr. Karney instituted foreclosure proceedings. An order of foreclosure was entered by the assistant clerk of the superior court, but a temporary restraining order was served upon the trustee to postpone the foreclosure sale pending a hearing on Ms. Cooper's motion for a permanent injunction.

The trial court found that Ms. Cooper's obligation on the note and deed of trust was to make payment on "a contingent fee contract, the amount of which is contingent upon a divorce of the [Coopers] and upon the value and amount of property awarded Ms. Cooper." The court concluded:

The said Exhibit "A" CONTRACT is void under the laws of this State as against public policy in accordance with THOMPSON v. THOMPSON et al, No. 8239DC578 of the North

In re Foreclosure of Cooper

Carolina Court of Appeals filed September 4, 1984, not yet published in the official Advance Sheets.

The said fee NOTE and the DEED OF TRUST here sought to be foreclosed were executed by Mrs. Cooper under and pursuant to said Exhibit "A" CONTRACT and thus lacked legal consideration and said two instruments are likewise void and of no legal effect.

The trial court permanently enjoined the foreclosure of the secured property and ordered the note and deed of trust cancelled.

The only issue on appeal is whether the trial court erred in concluding that the contingent-fee contract in this case is void as against the public policy of this State. We conclude that, although a contingent-fee contract in a divorce, alimony, or child support proceeding is void under *Thompson v. Thompson*, 70 N.C. App. 147, 319 S.E. 2d 315 (1984), *rev'd on other grounds*, 313 N.C. 313, 328 S.E. 2d 288 (1985), a separate contingent-fee contract in an equitable distribution proceeding may be fully enforceable. The trial court's ruling was based on the conclusion that the contract was contingent upon a divorce and contingent in amount on the value of the equitable distribution recovery. To the extent the decision relies on the conclusion that the contract is void because it was contingent in amount upon her share of the equitable distribution, it is modified to exclude that basis. The trial court's ruling in reliance on *Thompson*, that the contract is void because it was contingent upon securing a divorce, is affirmed.

I

Although the *Thompson* decision did not involve or discuss equitable distribution, we must consider whether the policies discussed in that case apply to contingent-fee contracts in equitable distribution actions.

In *Thompson*, the plaintiff had entered into a contingent-fee contract with a law firm to represent her in "a contemplated domestic relations action against plaintiff's then-husband." Plaintiff discharged the firm and, after securing other counsel, sought "alimony, alimony *pendente lite*, and the setting aside of certain purportedly fraudulent conveyances and stock transfers involving the family business and properties." The original law firm in-

tervened to protect its alleged interest in the wife's recovery. This Court faced the issue squarely:

> The question of the validity of a contingent fee contract in a domestic case is one of first impression in this jurisdiction. However, the longstanding and prevailing view in other jurisdictions is that a fee contract contingent on the securing of a divorce, or contingent in amount on the amount of alimony, support, or property settlement to be obtained, is against public policy and void.

70 N.C. App. at 154, 319 S.E. 2d at 320 (citations omitted). The Court followed the prevailing view, relying on the reasoning in *Barelli v. Levin*, 144 Ind. App. 576, 247 N.E. 2d 847 (1969). The Court noted that in *Barelli*, the Indiana Appellate Court held that a contingent-fee contract in a divorce action was void as against public policy.

The Court in *Thompson* discussed the basic public policy considerations identified in *Barelli* as having led to the majority rule against contingent-fee contracts in divorce cases: "(1) the recognition that these contracts tend to promote divorce and (2) the lack of need for such contracts under modern domestic relations law." *Thompson*, 70 N.C. App. at 155, 319 S.E. 2d at 320. The first policy consideration encompasses the concern that contingent-fee contracts provide an inducement for attorneys to advise the dissolution of marriage ties and to discourage reconciliation. *Id.* The second policy consideration recognizes that many states, including North Carolina, provide statutory authority for the court to award, in its discretion, reasonable attorney's fees to an interested party unable to afford representation in actions for child custody and support, *see* N.C. Gen. Stat. Sec. 50-13.6 (1984), and to a dependent spouse in alimony actions when that spouse would be entitled to alimony *pendente lite*, *see* N.C. Gen. Stat. Sec. 50-16.4 (1984). *Thompson*, 70 N.C. App. at 155 n. 2, 319 S.E. 2d at 321; *see also* N.C. Gen. Stat. Sec. 6-21(4), (10) & (11) (1981). A final policy consideration identified in *Barelli* and adopted in *Thompson* was that because divorce actions are fraught with emotion, there is a danger of overreaching by attorneys. *Thompson*, 70 N.C. App. at 156, 319 S.E. 2d at 321 (quoting *Barelli*, 144 Ind. App. at 589, 247 N.E. 2d at 853); *see* Part II, *infra*.

The first policy reason identified in *Thompson* for excluding contingent-fee contracts in divorce cases has been questioned by critics. Not all are persuaded that a significant number of attorneys would discourage reconciliation when it appears that a marriage is salvageable. One author perceptively argues:

> Indeed, [this] rationale reflects a jaundiced view of human motivation. Under this view of human nature one can just as easily argue that a contingent fee promotes reconciliation, because a client would be tempted to reconcile to avoid paying the contingent fee.

Comment, *Professional Responsibility—Contingent Fees in Domestic Relations Actions: Equal Freedom to Contract for the Domestic Relations Bar*, 62 N.C. L. Rev. 381, 387 (1984) (footnote omitted). We also note that attorneys who do fall within this category would also discourage reconciliation under a fixed-rate hourly-fee contract; after all, a reconciled divorce requires fewer billable hours than a divorce drawn out through the litigation process.[1]

We recognize that, although an equitable distribution action may proceed independently of a divorce action, N.C. Gen. Stat. Sec. 50-21(a) (1984) (decree of absolute divorce must precede equitable distribution), in most cases an attorney will represent the same client in both actions. *Cf.* N.C. Gen. Stat. Sec. 50-11(e) (1984) (right to equitable distribution destroyed if not asserted prior to divorce decree). And although we question whether contingent-fee contracts do, in fact, promote divorce or discourage reconciliation, we are bound by the holding in *Thompson* that such contracts are void in divorce, alimony and child-support cases. But *Thompson* did not involve equitable distribution, and it is possible for an attorney to have two agreements with his or her client—one for a fixed fee to secure a divorce and one for a percentage fee to prosecute the equitable distribution action.[2]

---

1. For several additional criticisms of the proposition that contingent-fee contracts promote divorce, discourage reconciliation, or provide greater incentive for attorneys to discourage reconciliation than fixed-fee contracts based on billable hours, see Comment, *supra*, at 386-88.

2. We realize that this decision indulges the fiction that equitable distribution actions are not contingent in fact upon the securing of a divorce. Obviously, there can be no equitable distribution without a divorce. Thus, there is an argument that

In many cases when an attorney wishes to represent a client in both a divorce action and an equitable distribution action, it may be too difficult to separate time spent on one action from time spent on the other. As a result, attorneys may decide to offer only fixed-fee contracts in all. cases. This, we believe, is the result of *Thompson*. Nonetheless, it does not compel us to condemn all contingent-fee· contracts in all equitable distribution cases. Although we do not countermand the conclusion in *Thompson* that contingent-fee contracts in some domestic cases promote divorce, we reject the proposition that such contracts in equitable distribution cases promote divorce.

The second policy consideration in *Thompson*—that contingent-fee contracts are unnecessary because court-awarded fees are available—is not implicated here. The equitable distribution statute does not provide for court-awarded attorney's fees in cases in which one party cannot afford legal representation. The statute was amended in 1985 to allow the court to award reasonable attorney's fees and court costs incurred by one spouse in regaining possession of separate property removed from the marital home or from possession of the owner. But this is a limited policing mechanism designed to protect against the unauthorized and wrongful "disappearance, waste or conversion" of separate property by the non-owner spouse, and the fee award is limited to the fair market value of the removed property. N.C. Gen. Stat. Sec. 50-20(i) (Supp. 1985). The legislature has not provided generally for statutory fees in equitable distribution proceedings. Thus, the reasoning in *Thompson*, that contingent-fee contracts are not needed to help destitute wives (or destitute husbands) in divorce, alimony and child support actions because statutory fees are available, is not applicable to equitable distribution actions.

We believe the third policy consideration in *Thompson*—preventing overreaching and the appearance of overreaching by attorneys—is as relevant in an equitable distribution proceeding as it is in a divorce action. In the next part of this opinion, the prob-

---

an attorney representing a client in both actions, even with a separate fixed-fee contract for the divorce, will encourage the divorce or discourage reconciliation. As mentioned above, such an attorney would discourage reconciliation to earn more fees even under a flat- or fixed-fee contract. In any event, we decline to expand *Thompson* or apply its reasoning on this issue to equitable distribution cases.

lem of overreaching is considered in more detail. Other concerns are also addressed.

## II

In the ongoing debate on the subject of contingent fees, several additional policies and concerns are frequently asserted in addition to those discussed above.

A. *Encouraging Litigation.*

Arguing against contingent fees, many, including the Chief Justice of the United States Supreme Court, contend that contingent fee contracts give rise to increased, often spurious, litigation. We find the following succinct rebuttal persuasive:

> Whatever may be the accuracy of this causal relationship between the contingent fee and frequency of litigation, the juxtaposition of the two subjects by these critics is dangerous. The argument presumes that social policy is well served by less litigation and then inherently admits that the way to discourage litigation is by striking out at the contingent fee! Not surprisingly, most of these critics have not found themselves in the vanguard of the rights of consumers, minorities and the disadvantaged in our society.

Shrager, *The Hammer for the Public Interest,* 71 A.B.A. J. 38, 40 (December 1985). Although we do not condone frivolous lawsuits, if contingent-fee contracts allow disadvantaged citizens to mount innovative challenges against old, unjust legal institutions and, in appropriate cases, replace them with modern and fair alternatives, we cannot say the propensity to "stir up" litigation is against public policy. *See* Perlman, *The Contingent Fee: The Victim's Only Hope for a Fighting Chance,* Trial, Dec. 1985, at 5. Moreover, under the typical contingent-fee arrangement, an attorney is paid based on the result achieved. Thus, there is little incentive for an attorney to file a losing case. Indeed, to the extent attorneys fear risking time and resources on a "loser," the contingent-fee system may screen out some of the baseless lawsuits. Unfortunately, baseless and spurious litigation will exist regardless of the fee arrangement.

B.  *Excessive Fees.*

A second criticism of the contingent-fee contract is that it permits attorneys to recover excessive fees, disproportionate to the effort required to secure the favorable outcome. It is asserted that contingent fees are not really contingent at all, except as to the amount of the fee, because so many modern legal doctrines make proof of liability easy and leave only the amount of the damages to be litigated. *See* DuBois, *Modify the Contingent Fee System*, 71 A.B.A. J. 38 (December 1985). Although there is always a risk that a particular case will be lost (especially medical negligence or products liability cases) *see* Shrager, *supra*, at 40, there is, admittedly, very little risk in an equitable distribution action that the client will recover nothing, even when there is an equitable, as opposed to an equal, distribution.

Before discussing the rebuttals to this criticism, we note the distinction between a contingent fee and a percentage fee. *See generally* Grady, *Some Ethical Questions About Percentage Fees*, 2 Litigation 20 (Summer 1976). A contingent fee is payable only upon the occurrence of a specified event, such as obtaining a certain judgment or outcome, in settlement negotiations or at trial. The fee itself may be a flat fee (a specific amount, owing only if the contingency occurs) or a percentage fee (a percentage of an award or recovery, again, owing only if the contingency occurs). Thus, a percentage fee is almost always contingent upon the receipt of an award. In some cases, such as the probate of large estates, clear cases of automobile negligence, and equitable distribution actions, the award is certain to be received and only uncertain in amount. The attorney's risk involves the size of the award relative to the time spent representing the client. The fact that the attorney almost certainly will receive *some* fee seems altogether reasonable and fair.

The concern about excessive fees relates to the possibility of disproportionate recovery presented by the contingent-percentage-fee contract. Although attorneys working for contingent fees often receive disproportionately little compensation relative to time spent, our main concern is the protection of clients from excessive fees. This protection is assured regarding contingent-fee contracts in three ways. First, the client has recourse to general

principles of law adopted in this State to guard against unreasonable contingent-fee contracts:

> The generally accepted view appears to be that a contract made between an attorney and his client, during the existence of the relationship, concerning the fee to be charged for the attorney's services, will be upheld if, but only if, it is shown to be reasonable and to have been fairly and freely made, with full knowledge by the client of its effect and of all the material circumstances relating to the reasonableness of the fee. The burden of proof is upon the attorney to show the reasonableness and the fairness of the contract, not upon the client to show the contrary. . . . *Contracts for contingent fees, especially, are closely scrutinized by the courts where there is any question as to their reasonableness,* irrespective of whether made prior to the commencement of or during the attorney-client relationship.

*Randolph v. Schuyler,* 284 N.C. 496, 504, 201 S.E. 2d 833, 837-38 (1974) (citations omitted) (emphasis added).

Second, attorneys are prohibited from accepting excessive fees by the Rules of Professional Conduct of the North Carolina State Bar, Rule 2.6 (1985), which provides in relevant part:

> (A) A lawyer shall not enter into an agreement for, charge, or collect an illegal or clearly excessive fee.

> (B) A fee is clearly excessive when, after a review of the facts, a lawyer of ordinary prudence experienced in the area of the law involved would be left with a definite and firm conviction that the fee is in excess of a reasonable fee. Factors to be considered in determining the reasonableness of a fee include the following:

>> (1) The time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly.

>> *     *     *

>> (3) The fee customarily charged in the locality for similar legal services.

>> (4) The amount involved and the results obtained.

\*    \*    \*

(6) The nature and length of the professional relationship with the client.

(7) The experience, reputation, and ability of the lawyer or lawyers performing the services.

(8) Whether the fee is fixed or contingent.

And the commentary adds: "All fees, including contingent fees, should be reasonable and not excessive as to percentage or amount." We do not suggest that every contingent-fee-arrangement is subject to reformation using the factors in Rule 2.6. But in the unusual case when an attorney's actual fee is clearly excessive in relation to the work performed or other factors, the fee may be attacked. It is sometimes true, as it is in the case at bar, that the attorney will voluntarily reduce the fee if, for example, it is too burdensome or the representation takes substantially less effort than originally contemplated by the parties. In any event, Rule 2.6 provides a mechanism whereby clearly excessive contingent fees may be challenged.

The third protection against excessive fees is inherent in the contingent-percentage-fee arrangement itself. One of the historical reasons for the acceptance of contingent-fee arrangements was that the client is assured that the fee will never exceed a fixed percentage of the recovery. *Cf.* N.C. Code of Professional Responsibility EC 2-20 (1984) (replaced with the Rules of Professional Conduct in 1985). In contrast, an hourly fee or a flat fee may exceed the client's recovery, if there is a recovery, or it may constitute a larger percentage of the recovery than the percentage in a contingent-fee contract. In short, declaring contingent-fee contracts void in equitable distribution cases would not solve the problem of excessive charges for legal services.

C.   *Conflict of Interest.*

It has been asserted that contingent-fee contracts in domestic relations cases may create conflicts of interest. *See* Martin, *Contingency Fees and Family Law*, 5 Calif. Law. 23, 73 (July 1985). For example, if a client wants a certain asset to be awarded to him or her, the client may prefer to set its value as low as possible (so the spouse does not receive an asset of comparable value),

while the attorney may prefer to value the client's distributive award at its highest value (for purposes of the percentage fee). *Id.* This, however, is not a significant concern under G.S. Sec. 50-20 because the trial court is required to identify and evaluate the marital property before distributing it. *Capps v. Capps*, 69 N.C. App. 755, 318 S.E. 2d 346 (1984). Thus, the attorney and client are unlikely to bicker over relative values before the distribution, and they always have the predetermined figures necessary to calculate the fee after an equitable distribution. Further, especially given the obligation of attorneys to represent their clients with zeal, if the objective of litigation is to obtain the maximum award possible, then contingent-fee contracts ensure that attorneys and their clients have the same overall interest and objective.

D.  *Disruption of Support Schedule.*

A frequent criticism of contingent-fee contracts in alimony and child support cases is that they may deprive a spouse or child of a regulated stream of funds carefully awarded by the court for support or living expenses; to allow the scheduled payments to be bargained away in advance is against public policy. *See* Comment, *supra*, at 391 (1984). We agree that contingent-fee contracts in child support cases are void as against public policy because they would disrupt the support schedule and because statutory attorney's fees may be awarded by the court. *See Davis v. Taylor*, 81 N.C. App. ---, 344 S.E. 2d 19 (1986).

Each spouse in an equitable distribution action presumably will have to pay an attorney's fee, and the money for that fee may well be unavailable unless and until the distribution is complete. In this sense, all fee arrangements are contingent upon the client's ability to pay, which, in turn, may depend upon the attorney's success in representing the client. *See* Comment, *supra*, at 387-88. Furthermore, equitable distribution in this State is accomplished without regard to alimony previously awarded; the amount of alimony previously awarded may be modified or vacated by the court after the marital property is equitably distributed. G.S. Sec. 50-20(f); *McIntosh v. McIntosh*, 74 N.C. App. 554, 328 S.E. 2d 600 (1985). Thus, as long as the court is informed of any depletion of distributed assets in order to pay attorney's fees arising from an equitable distribution action, the alimony award can be modified justly, and there will be no disruption of the

court-determined future support award. *See Capps*; Comment, *supra*, at 392.

E.  *Overreaching.*

One final criticism of contingent fees in domestic cases must be addressed: that contingent-fee contracts present the danger of overreaching or at least the appearance of overreaching. This concern is based on the assumption that clients in domestic actions are especially susceptible to overreaching by attorneys. In *Thompson*, this Court quoted the decision of the Indiana Court of Appeals in *Barelli*:

> Wives contemplating divorce are often distraught and without experience in negotiating contracts. Should contingent fee contracts between them and the attorneys they employ under such conditions become the usual fee arrangement, charges of overreaching and undue influence will be all too frequent. The public, the legal profession, and the bench would all suffer. We believe all will benefit by maintaining the present public policy of not enforcing such contracts no matter how freely and fairly entered into and how reasonable may be the fee thereby produced. The wise discretion of capable and experienced trial judges (aided by the evidence placed before them by the parties prior to the time the court fixes the fee to be paid by the husband) can be relied upon to assure every attorney an adequate fee and thus assure every wife adequate representation.

70 N.C. App. at 156, 319 S.E. 2d at 321 (quoting *Barelli*, 144 Ind. App. at 589, 247 N.E. 2d at 853). In *Barelli*, the Indiana Court of Appeals apparently reached this result based in part on a distinction between its case and a California case that had upheld a contingent-fee contract with a husband contemplating divorce. *See Krieger v. Bulpitt*, 40 Cal. 2d 97, 251 P. 2d 673 (1953). This Court rejects any such distinction based on the sex of the spouse. California's approach is to permit contingent-fee contracts on a case-by-case basis when it is reasonably clear that neither dissolution of a marriage is in fact encouraged, nor reconciliation discouraged. *See generally Martin, supra*, at 23-24. Even on a case-by-case basis, we believe there are more valid and relevant distinctions to be drawn than the gender of the litigant.

There is some appeal to the argument that, because emotionally piqued clients may have less than their full faculties about them, contingent-fee contracts should not be permitted. Even when a specific contract is fair, it may be perceived by the public that the attorney took advantage of a vulnerable client. But we permit such contracts in personal injury, wrongful death and other actions. *See High Point Casket Company v. Wheeler*, 182 N.C. 459, 467, 109 S.E. 378, 383 (1921) (setting forth a good faith, fairness and reasonableness standard to assess the validity of contingent-fee contracts); *see also Olive v. Williams*, 42 N.C. App. 380, 257 S.E. 2d 90 (1979). It is just as likely that an automobile-accident victim will be unfamiliar with attorney's fee contracts as will be an equitable-distribution client. *See* Comment, *supra*, at 392 (arguing the case for any type of domestic action client). The client bringing a wrongful death action is just as distraught, perhaps more so, than the client seeking equitable distribution. Why should we disallow contingent-fee contracts in personal injury and wrongful death cases only when there is evidence of fraud or undue influence and, at the same time, prohibit all contingent-fee contracts in equitable distribution actions? We do not believe the latter category embraces a significantly greater danger of overreaching or the appearance of overreaching. Moreover, all contingent-fee contracts are subject to close scrutiny if there is any question regarding their fairness. *Randolph; Olive.*

F.   *Summary and Balancing.*

In sum, the public policies advanced against contingent-fee contracts in divorce, alimony, and child support actions are either inapplicable to actions for equitable distribution of marital property or collapse of their own weight upon careful examination. To the extent that some of the policies discussed above might have some validity in equitable distribution proceedings, they are outweighed by the public policy of this State that litigants with insufficient means to protect their rights have reasonably experienced counsel available. *See High Point Casket Co.* Whenever one spouse controls the marital assets, the economically disadvantaged spouse may be unable to afford representation based upon an hourly or flat fee.

Critics of contingent-fee contracts in domestic litigation frequently cite the Model Code of Professional Responsibility EC

2-20 (1980) which provides, "because of the human relationships involved and the unique character of the proceedings, contingent fee arrangements in domestic relations cases are rarely justified." The Model Code does not, however, prohibit such contracts in its Disciplinary Rules. More importantly, this sentence was not adopted by the North Carolina Bar in its 1973 Code of Professional Responsibility or its 1985 Rules of Professional Conduct. Although superseded in 1985 by the Rules of Professional Conduct, we find Ethical Consideration 2-20 of the 1973 North Carolina Code of Professional Responsibility instructive on the public policy in this field:

> Contingent fee arrangements in civil cases have long been commonly accepted in the United States in proceedings to enforce claims. The historical bases of their acceptance are that (1) they often, and in a variety of circumstances, provide the only practical means by which one having a claim against another can economically afford, finance, and obtain the services of a competent lawyer to prosecute [the] claim, and (2) a successful prosecution of the claim produces a *res* out of which the fee can be paid. Public policy properly condemns contingent fee arrangements in criminal cases, largely on the ground that legal services in criminal cases do not produce a *res* with which to pay the fee.

Both of these historical considerations support contingent-fee contracts in equitable distribution actions.

### III

The contingent-fee contract in the case at bar did not state whether the fee was contingent with respect to both the divorce and the equitable distribution actions or the equitable distribution action alone. Mr. Karney argues that it was intended to cover payment for the equitable distribution action alone, and he points to the fact that the divorce was uncontested. We note that the Coopers were not divorced until 24 January 1983, and the contract between Mr. Karney and Ms. Cooper was signed on 28 December 1982. Had the Coopers reconciled in the interim and decided to salvage their marriage, Mr. Karney would have received no fee under the contract. Of course, it was not known at the time that contingent-fee contracts in divorce actions would be held void as against public policy in *Thompson*.

The trial court specifically found that Mr. Karney's services in securing a divorce for Ms. Cooper were pursuant to the contingent-fee contract. It also found:

> That said . . . CONTRACT is a contingent fee contract, the amount of which is contingent upon a divorce of the parties and upon the value and amount of property awarded Mrs. Cooper.

These findings are supported by the evidence. Although Mr. Karney urges that the uncontested divorce involved relatively minimal time compared with the time he spent on the equitable distribution claim, the fact remains that the fee was directly contingent upon securing the divorce. This is fatal to his claim. Although it is surely little solace to Mr. Karney, because he cannot recover in *quantum meruit* for services rendered pursuant to a contract held void as against public policy, *see Thompson v. Thompson*, 313 N.C. 313, 328 S.E. 2d 288 (1985); *Davis v. Taylor*, the portion of the trial court's decision holding the contract void on the ground that it is contingent upon the value of the property awarded in an equitable distribution action is erroneous.

We hold that a contingent-fee arrangement covering services rendered in an equitable distribution action is fully enforceable as long as it does not provide compensation to the attorney for securing the divorce. If an attorney represents a client in both a divorce proceeding and an equitable distribution proceeding, and the client wishes to have a contingent-fee contract in the equitable distribution proceeding, they must execute a separate agreement to provide for a fee in the divorce action that is not contingent upon the securing of the divorce. We do not intend to encourage or discourage contingent-fee contracts in equitable distribution litigation; we hold only that they are not void as against public policy. The contract in the case at bar was contingent in part on the securing of a divorce and was therefore void under *Thompson*. The permanent injunction ordered by the trial court to prevent the foreclosure on the deed of trust securing payment under the contract was proper.

For the reasons set forth above, the decision of the trial court is

Modified and affirmed.

Chief Judge HEDRICK and Judge PARKER concur in the result.