253 So.2d 394 (1971)
Eddie Mae AVANT
v.
Edward WHITTEN.
No. 46299.
Supreme Court of Mississippi.
October 11, 1971.
Rehearing Denied November 1, 1971.
Ted Lucas Smith, Batesville, for appellant.
Garner, Whitten, May & Garner, Jon B. Love, Hernando, for appellee.
SMITH, Justice:
Eddie Mae Avant was complainant and Edward Lee Whitten, appellee, was defendant, in a suit filed by her in the Chancery Court of the First Judicial District of Panola County. From a decree dismissing her bill, she has appealed.
The case involves the validity of an attorney's contingent fee contract, conditioned upon obtaining a divorce for his client. The pertinent portions of the contract under consideration here are as follows:
33 acres of land located in Panola County, Mississippi, Attorney fee  fifty percent (50%) of anything recovered either personal property or land 
This is action for divorce and to recover one-half 1/2 of 33 acres of land. Client has previously attempted to obtain a divorce and was denied a divorce. She *395 needs a divorce before she can file a partition suit to obtain her interest in the land and personal property.
The client (appellant here) was a 54-year-old woman with some grade school education. In 1955, her husband had conveyed to her an undivided one-half interest in approximately 33 acres of land in Panola County and her ownership of this interest has never been questioned. Almost a year before the events here involved took place, appellant and her husband separated. Appellant desired to obtain a divorce from her husband and to partite the land she owned in common with him. She employed an attorney, not the appellee, and a bill, directed toward those ends, was filed in the Chancery Court of Panola County. The appellant, as complainant in that case, predicated her bill for divorce upon the ground of habitual cruel and inhuman treatment. Issue was joined, the case was tried and a final decree was entered on February 25, 1969 dismissing her bill with prejudice.
Thereafter, on March 10, 1969, appellant consulted appellee, an attorney, as to the possibility of obtaining a divorce and dividing the real property. He testified that on that occasion he advised her that "* * * a divorce would be necessary to obtain her interest in the land" which she owned in common with her husband. He prepared and had his client execute the employment contract containing the above quoted terms. He said that since the separation had occurred some 10 months previously, he had advised appellant that she must wait 2 months more and that then she could obtain a divorce upon the ground of "constructive desertion." When these 2 months had elapsed, appellee prepared and filed for appellant a bill which sought a divorce from her husband upon the ground of "constructive desertion" for more than one year.
There is nothing in the record to suggest that the case presented novel or abstruse features or involved an area in which the law is not settled. On the contrary, it appears that the bill was no more than the usual bill, seeking a divorce, alimony and solicitor's fees. Since the husband's income seems to have been limited to a monthly social security check of $62 and his estate and appellant's to a one-half interest each in the 30 odd acres of land, complainant's prospects of financial gain would appear to have been meager.
A hearing was set on the temporary alimony issue but was not held. Meanwhile, the husband answered and also filed a cross-bill demanding a divorce from appellant. On June 30, 1969, appellant and her husband divided the land by an exchange of quitclaim deeds, appellant receiving slightly more than 20 acres and her husband the remaining 10 plus acres on which the improvements were located. On July 7, 1969, appellant's bill was voluntarily dismissed and a waiver of process and entry of her appearance to her husband's cross-bill was filed. The next day, July 8, 1969, the case was presented as an uncontested divorce case, by the husband's attorney, on the husband's cross-bill, and a divorce from appellant was granted to the husband.
The position of the appellee is that, under his contingent fee contract of employment, he was entitled to one-half of appellant's 20 odd acres of land. Upon that premise, he prepared, and had her execute, a quitclaim deed conveying half of her portion of the land to him. This he sold to third parties for $3,450.
Appellant's bill in this case sought to set aside the purported deed to appellee or, alternatively, to recover damages of him in the amount of $13,500, that sum comprising $3,000 actual damages, $10,000 punitive damages and $500 as a reasonable attorney's fees for the services of her counsel.
After a trial, the chancellor dismissed appellant's bill upon the ground that appellant had failed to meet the burden of proof which he said rested upon her, and she has brought the case here on appeal.
Appellant asserts that the contingent employment contract and the subsequent deed *396 to appellee were invalid for any or all of several reasons. She charges that throughout appellee was acting as her attorney, that a fiduciary relationship therefore existed between them, that he took advantage of her trust and confidence to obtain the contract and deed, both of which were prepared by him in his office, her acknowledgment to the deed having been taken by one of appellee's partners; and that the execution of the instruments was the result of undue influence brought to bear upon her by appellee while acting as her attorney. Moreover, it is argued that appellee did not "recover" the land because appellant already owned it.
It seems to be conceded that the persons to whom appellee conveyed were innocent purchasers for value without notice of the antecedent facts and circumstances and that the land itself is now beyond reach. Moreover, punitive damages are not recoverable in a court of equity, nor is appellant entitled to have the fees of her present attorney paid by appellee.
It will not be necessary to consider, and we do not reach the questions raised as to the alleged breach of trust based upon the fiduciary relationship and undue influence.
In holding that a contract such as that under consideration violates public policy and is invalid we adopt as apt the language of the Florida Court of Appeals in Sobieski v. Maresco, 143 So.2d 62 (1962):
The principal issue presented by this appeal is the validity of a contingent fee agreement in a matrimonial action. Neither counsel, in their excellent briefs, nor this court, by independent research, have discovered any Florida decision directly on this point. It does appear, however, that a number of other jurisdictions have passed on the validity of such an agreement and have almost universally declared such employment contracts void. The chancellor's decree, here under review, is in accord with the majority opinion that attorneys' contingent fee employment contracts in matrimonial actions are against public policy and therefore unenforceable. See: McCarthy v. Santangelo (1951), 137 Conn. 410, 78 A.2d 240; In re Fisher (1958), 15 Ill.2d 139, 153 N.E.2d 832; Dannenberg v. Dannenberg (1940), 151 Kan. 600, 100 P.2d 667; Baskerville v. Baskerville (1956), 246 Minn. 496, 75 N.W.2d 762; State ex rel. Nebraska State Bar Ass'n v. Jensen (1960), 171 Neb. 1, 105 N.W.2d 459; In re Smith (1953), 42 Wash.2d 188, 254 P.2d 464; 5 Am.Jur., Attorneys at Law, § 166; 30 A.L.R. 189. There appears to be no good reason why Florida should not join those states which hold such agreements void and unenforceable.
Barrelli v. Levin, 247 N.E.2d 847 (Ind. App. 1969), involved a suit brought by a divorced wife to expunge an attorney's lien. The court held that a contingent fee contract to pay an attorney a sum equal to a percentage of "whatever may be recovered" in a divorce action commenced by the wife was contrary to public policy and was void. The Indiana Court cited with approval Sobieski v. Maresco, supra, saying:
It may well be that a majority of the general public is no longer concerned with whether divorces are socially desirable or undesirable, or whether contracts that are designed to facilitate or promote the granting of divorces are valid. We are not yet ready to say, however, that it is no longer the public policy of the State of Indiana to discourage divorces and to condemn contracts which discourage reconciliations and provide incentives to attorneys to obtain divorces. But even if we were inclined so to hold, there is no compelling reason, or necessity, for us to do so. No matter how destitute the wife may be, she does not need a contingent fee contract to enable her to employ an attorney. Her ability to employ an attorney is assured by the *397 statute which empowers and requires the court to order the husband to pay both a preliminary fee and a reasonable fee at the time he grants the wife a divorce. Thus there is no necessity, so far as the wife is concerned, for abandoning the rule that a contingent fee contract to pay an attorney a sum equal to a percentage of the alimony or property settlement recovered in a divorce action is contrary to public policy and therefore void. (247 N.E.2d at 853).
In the Arkansas case of McDearmon v. Gordon & Gremillion, 247 Ark. 318, 445 S.W.2d 488 (1969) the Supreme Court of Arkansas held that a contract between attorney and client in a divorce suit provided for a contingent fee and was invalid as against public policy. The court cited the Florida case of Sobieski v. Maresco, supra, with approval at page 493, and quoted from the Michigan case of Jordan v. Westerman, 62 Mich. 170, 28 N.W. 826 (1886):
Public policy is interested in maintaining the family relation, the interests of society requiring that such relation be not lightly severed, and that families shall not be broken up for inadequate causes or from unworthy motives; and where differences have arisen, which threaten disruption, public welfare and the good of society demand a reconciliation, if practicable or possible; and for these reasons, a contract which tends to prevent such a reconciliation is void. (445 S.W.2d at 494).
There is testimony from appellee in the record, offered as an alternative defense to recovery by appellant, as to time spent in "research" and upon other aspects of the case on the basis of which, it is said, he is entitled to the $3,450 he had received from the sale as a reasonable fee upon the basis of quantum meruit, even if his contract and deed are invalid.
This testimony must be viewed in the light of the services actually performed and bear some reasonable relationship to what actually was done. In other words, the expenditure of time must appear to have had some reasonable justification based upon the reasonable necessities of the case as disclosed by the indisputable facts. So considered, it is apparent that the case involved no issue which was actually litigated, and presented no novel or recondite legal question nor did it require exploration of any unsettled area in the law. In the last analysis, while the bill for divorce was prepared and filed, the case was not tried and the bill was voluntarily dismissed. The divorce which ultimately resulted was granted to the opposite party, represented by his own attorney. The division of the land owned by the parties was effected by an exchange of deeds between husband and wife. Also, in matrimonial litigation, some consideration must be accorded the financial status of the parties. Here the estate of both husband and wife was comprised by some 30 acres of land. The husband's income consisted of a monthly social security check of $62.
We hold that the contingent fee contract and deed executed pursuant to it were void as against public policy. Appellant is entitled to recover the value of the land conveyed to appellee as damages in lieu of regaining the land itself. Her demand for actual damages was limited by her bill to the sum of $3,000 which is $450 less than the sum received by appellee in selling it. No cross-bill was filed by appellee. However, he was entitled to a fee upon a quantum meruit basis. From the whole record, and limited to services actually rendered, the $450 obtained by appellee from sale of the land, and which he will retain, over and above appellant's recovery, appears to be reasonably adequate compensation. Particularly is this true when considered, (as it must be where the amount of the fee is not contractual, but is fixed by the court), in the light of the financial status of the parties involved. The decree appealed from will be reversed and a money judgment will be entered *398 here in favor of appellant against appellee in the amount of $3,000.
Reversed and judgment here for appellant in the sum of $3,000.00.
RODGERS, P.J., and JONES, BRADY and SUGG, JJ., concur.