534 So.2d 1015 (1988)
Mable COLLIER, Victor Alexander, Charlotte Alexander and Willie Louise Burrell, Heirs at Law of Victor Blue Alexander, Deceased: Lewis E. Turner and Robert W. Vaughan
v.
SHELL OIL COMPANY and Amoco Production Company.
No. 58824.
Supreme Court of Mississippi.
November 9, 1988.
Rehearing Denied December 21, 1988.
*1016 Barry W. Gilmer, Gilmer Law Firm, Jackson, for appellant.
David B. Gross, Jackson, Hugh Craig Forshner, New Orleans, La., for appellee.
Before DAN M. LEE, P.J., and ROBERTSON and GRIFFIN, JJ.
ROBERTSON, Justice, for the court:

I.
This case presents the hardest question spawned by Trimble v. Gordon, 430 U.S. 762, 97 S.Ct. 1459, 52 L.Ed.2d 31 (1977). Putative heirs of a Rankin County landowner claim under our statute on descent and distribution as modified by the Equal Protection Clause, Trimble variety. Pre-Trimble innocent third party purchasers for value invoke due process and contracts clause rights in defense.
The Chancery Court held for the third party purchasers. We affirm.

II.

A.
Lou Vander McLaurin died intestate in June of 1955 and was laid to rest at the Rock Hill Baptist Church Cemetery. At his death McLaurin owned forty acres of rough and hilly woods in Rankin County, Mississippi. The land had been his on and off since 1892, at times flourishing with cotton, corn, peas, sorghum, turnips and timber, at others fallow. The land's value lay in its potential for oil and gas.
Seven legitimate children survived McLaurin. Our concern focuses upon Victor Blue Alexander (Alexander) whom plaintiffs claim was an eighth child, albeit one born out of wedlock. When he became an adult, Alexander entered into a common law marriage with Mable Collier in 1926, and together sired Victor Alexander, Charlotte Alexander and Willie Louise Burrell. Neither Mable Collier nor Alexander himself ever established paternity in a formal proceeding, but we are told that Lou Vander McLaurin openly acknowledged Alexander to be his son.
Between March 12, 1969, and March 13, 1974, McLaurin's legitimate heirs executed leases conveying to Shell Oil Company certain rights to the oil, gas and minerals under and on the land. Shell immediately went into production, and its drilling operations continued for more than ten years. Shell has acknowledged gross income of about $13,000,000.00 between 1973 and 1983.
On February 9, 1977, Shell assigned an overriding royalty to Amoco Production Company. Then on December 22, 1983, Shell transferred all of its interest in the subject lands to a subsidiary corporation, Shell Western E & P, Inc. (SWEPI).
Meanwhile, the alignment of plaintiffs was completed on September 11, 1982, when the putative illegitimate heirs of Lou Vander McLaurin conveyed oil and gas interests to Robert W. Vaughan and Lewis E. Turner.

B.
On June 29, 1984, Mable Collier, alleged common law wife of Victor Blue Alexander, joined with his three illegitimate heirs at law and filed complaint with the Chancery Court of Rankin County. Plaintiffs sought to establish their right to inherit as against legitimate heirs at law of Victor Blue Alexander's alleged father, Lou Vander McLaurin, and Amoco Production Company (Amoco) and Shell Oil Company *1017 (Shell). Plaintiffs claim rights of inheritance under Miss. Code Ann. § 91-1-15 (Supp. 1988). Robert W. Vaughan and Lewis E. Turner claimed as Plaintiffs' successors in interest.
On September 10, 1986, Shell moved for summary judgment. Amoco filed its summary judgment motion on January 14, 1987. On November 9, 1987, after argument and consideration of briefs and authorities, the Court granted summary judgment in favor of Amoco and Shell, and dismissed the complaint with prejudice. The Court found that retroactive application of Trimble v. Gordon, 430 U.S. 762, 97 S.Ct. 1459, 52 L.Ed.2d 31 (1977) and Miss. Code Ann. § 91-1-15 (1972 as amended) would violate Amoco and Shell's due process rights under the Fourteenth Amendment of the United States Constitution, as well as the prohibition of any law impairing the obligation of contracts under Article 1, § 10 of the United States Constitution, and Article 3, § 14 of the Mississippi Constitution. The Court further held that third parties are governed by the law at the time they acquire their interests.
Plaintiffs now appeal to this Court.

III.
The Supreme Court of the United States decided Trimble v. Gordon on April 26, 1977. Trimble reads the Equal Protection Clause of the Fourteenth Amendment to the Constitution of the United States. The case stands for the proposition that "a total statutory disinheritance, from the paternal estate, of children born out of wedlock and not legitimated by the subsequent marriage of their parents, is unconstitutional." Reed v. Campbell, 476 U.S. 852, 854, 106 S.Ct. 2234, 2236, 90 L.Ed.2d 858, 862 (1986).
Trimble's mandate has been implemented in this state via legislative enactment. Miss. Code Ann. § 91-1-15 (Supp. 1988). That statute purports to put illegitimates on the same footing as legitimate heirs for descent and distribution purposes. The statute vests in persons such as today's plaintiffs rights of inheritance, provided such rights be asserted before July 1, 1984. Today's plaintiffs brought their suit two days before that statutory deadline.
This Court has recognized claims of putative illegitimate heirs under Section 91-1-15, notwithstanding that the rights of the legitimate heirs had vested via inheritance prior to the enactment of Section 91-1-15 or the 1977 decision in Trimble v. Gordon. See Holloway v. Jones, 492 So.2d 573 (Miss. 1986); Berry v. Berry, 463 So.2d 1031 (Miss. 1984); and In Matter of Estate of Kimble, 447 So.2d 1278 (Miss. 1984). But see In Matter of Estate of Smiley, 530 So.2d 18 (Miss. 1988).
Interests in land are not protected as vested property rights where the interests have been acquired by inheritance and without detrimental reliance and no subsequent transaction has been executed. One who has acquired title by operation of law under prior interpretation of the law regulating descent and distribution must yield to a subsequent change of interpretation. Thus, the three illegitimate heirs of Willie Holmes were allowed to take, notwithstanding Holmes' death on February 16, 1969, and that pre-Trimble rights of inheritance vested in his five legitimate children on that date. Holloway, 492 So.2d at 573. We recognized the viability of Clarence Wilbert Berry's claim, as the illegitimate son of Shelby Berry, notwithstanding that Shelby Berry died in 1958 and that his 160-acre tract vested in his legitimate heirs at law at that time. Berry, 463 So.2d at 1032-33. And so in Estate of Kimble.
Today's case presents a different question. Unlike Holloway, Berry, and Kimble, we are not here directly concerned with the rights of Lou Vander McLaurin's seven legitimate children who succeeded to his estate upon his death in June of 1955. Our focus, rather, is upon the rights those heirs passed to two bona fide purchasers for value, first to Shell Oil Company by conveyances between March 12, 1969, and March 13, 1974, a part of which in turn were passed on to Amoco prior to February 9, 1977, all before Trimble was decided on April 26, 1977.
Insofar as McLaurin's illegitimate heirs  plaintiffs below  claim under Section *1018 91-1-15, the point is easy. The Constitution denies to the states the power to enact any law impairing the obligations of contracts. U.S. Const. Art. I, § 10, cl. 1; see also Miss. Const. Art. 3, § 16 (1890). Rights in real property acquired under contract and for value are among those within the protection of the Constitution. Builders Supply Co. of Hattiesburg v. Pine Belt Savings & Loan Association, 369 So.2d 743, 745 (Miss. 1979); Wisconsin Lumber Co. v. State ex rel. Gillespie, 97 Miss. 571, 598, 54 So. 247, 249-50 (1911). The rights acquired by Shell and Amoco are contract rights. So seen, plaintiffs' claims fail. Any rights plaintiffs may enjoy because of Section 91-1-15 vested after the date when contract rights vested in Shell and Amoco, and are wholly subject to those rights.
The more difficult question appears when plaintiffs ground their claim not in the Mississippi statute but in the Equal Protection Clause. These plaintiffs enjoyed equal protection rights from birth, long before Shell and Amoco acquired their rights. But did the Equal Protection Clause mean what Trimble says it means before Trimble was decided? More important should we now read the Equal Protection Clause to declare that McLaurin's estate vested in his illegitimate heirs upon his death in 1955, as and at the moment his legitimate heirs became vested? If so, Shell and ultimately Amoco, must be held to have proceeded at their peril.
In a legal system based on precedent, there is a "built-in presumption of retroactivity," Solem v. Stumes, 465 U.S. 638, 642, 104 S.Ct. 1338, 1341, 79 L.Ed.2d 579, 586 (1984); Merritt v. State, 517 So.2d 517, 521 (Miss. 1987). Some see this to suggest that Trimble was latent within the Equal Protection Clause from ratification notwithstanding that discovery occurred only in 1976. There is a better view: that "we should not indulge in the fiction that the law now announced has always been the law... ." Griffin v. Illinois, 351 U.S. 12, 26, 76 S.Ct. 585, 594, 100 L.Ed. 891, 903 (1956) (Frankfurter, J., concurring). Candor requires concession that the presumption of retroactivity is nothing short of a mandate for ex post facto application of new law, of that which was not law until articulated by some sovereign that could be identified. Southern Pacific Co. v. Jensen, 244 U.S. 205, 222, 37 S.Ct. 524, 531, 61 L.Ed. 1086, 1101 (1917) (Holmes, J., dissenting).
Reed v. Campbell, 476 U.S. 852, 106 S.Ct. 2234, 90 L.Ed.2d 858 (1986), begins our search for just how much of an ex post facto law we have; as Reed held that Trimble may be applied retroactively with qualification. In Reed, appellant's putative father died before Trimble was decided. After Trimble appellant filed a claim against his estate, and the Texas Court of Appeals denied the claim, holding that Trimble does not apply retroactively. The Supreme Court in Reed held there was no justification for the state's rejection of the claim. At least while the estate remains open, neither the date of the father's death nor the date appellant's claim was filed should have prevented the application of Trimble. Reed at 2237, 2238.
Reed does not carry us far, for in similar fact situations Holloway, Berry and Kimble have recognized broader retroactivity in enforcement of Section 91-1-15. We must proceed on our own.
Shell and then Amoco are bona fide purchasers for value. At the time they took neither land records nor accessible law gave them notice that McLaurin's illegitimate heirs had rights in his estate. As such, Shell, and then Amoco, acquired title against the world. Indeed, we have recognized that
every reasonable intendment should be made to support the titles of bona fide purchasers of real property, and that no equity can be any stronger than that of a purchaser who has put himself in peril by purchasing a title for a valuable consideration without notice of any defect in it.
Giesbrecht v. Smith, 397 So.2d 73, 77 (Miss. 1981). How much stronger is that equity where the purchasers have relied to their detriment and engaged in ten years of successful drilling operations.
By the same token, the state's interest in the stability of land titles is very much at *1019 issue today. Purchasers of interests in land should not be required at their peril to predict the future course of constitutional law. To be sure, law is not something that is but "a continuous process of becoming".[1] It may well be that back in the late 1960s and early 1970s astute lawyers should have foreseen that it was just a matter of time before the disabilities our law had inflicted upon illegitimates would begin to fall. But those disabilities had not yet fallen when Shell and Amoco struck their deals and paid their money. That an advance in the law be a gleam in the lawyer's eye must not be held to retard enterprise. Besides, we doubt it was foreseeable that Trimble when it (inevitably) came would be applied retroactively to divest the rights of bona fide purchasers for value.
AFFIRMED
ROY NOBLE LEE, C.J., HAWKINS and DAN M. LEE, P.JJ., and PRATHER, SULLIVAN, ANDERSON, GRIFFIN and ZUCCARO, JJ., concur.
NOTES
[1] Hart, Holmes' Positivism  An Addendum, 64 Harv.L.Rev. 929, 930 (1951).