CARLTON, J.,
for the Court.
¶ 1. This is an appeal concerning whether a grantee of a deed was a bona fide purchaser. The trial court voided the deed to the grantee. Finding no error, we affirm the decision of the chancellor to void the deed.
FACTS
¶ 2. The circumstances from which this litigation derived have already been detailed by this Court. See Robberson v. Burton, 790 So.2d 226 (Miss.Ct.App.2001) (referred to in this opinion as Robberson 1). The relevant facts to the current appeal, and as stated in Robberson 1, include the following:
Claiming to own an undivided one-fourth interest in certain real property, Gary Robberson filed a “Petition for Sale of Land for Partition” against Jewel Wheeler Burton, Ricky Fikes and Nancy Wheeler Fikes in the Chancery Court of Itawamba County, Mississippi. Later, the chancellor granted Robberson *1268 leave to add Edsel Burton and Lena Shae Gray as party defendants to his petition for partition. The property which is the subject of this appeal consists of two tracts of land lying in Ita-wamba County. The first tract (Tract I) is made up of twenty-two acres and located on the property is the home of Jewel and Edsel Burton. Tract II consists of twenty-seven acres of farm land. Both tracts were purchased by Jewel Wheeler Burton and her now deceased first husband, Charles Wheeler, in the 1960⅛. Charles executed a will in 1982; he died in 1988. In the will he bequeathed to his wife, Jewel, his share of two acres of the subject property containing their home and surrounding area on which they resided. Also in the will, Charles left equal shares of his interest in the couples’ remaining acreage to his wife and daughter, Nancy, giving Nancy Wheeler a one-fourth interest in the total of Tract I and Tract II, not including the two acres specifically designated to Jewel. That will was never probated.
In 1991, Jewel remarried. Subsequently, she deeded all of her interest in both tracts of land to Lena Shae Gray, Nancy’s daughter and Jewel’s granddaughter. She retained a life estate in the home and the two acres devised to her in the as-yet unprobated will.
Robberson, 790 So.2d at 227-28 (¶¶ 2-3).
¶ 3. Nancy and Fikes were married on February 12, 1995. Nancy executed a deed to Lena Shae Gray on February 17, 1995. This deed conveyed Nancy’s undivided one-fourth interest in the property and reserved a life estate for Nancy. Nancy hid this deed from Fikes but disclosed the deed to her daughter. On, March 13, 1995, Nancy conveyed her one-fourth interest in the entire property to Fikes. On August 28, 1995, Robberson, first cousin of Fikes, acquired a deed from Fikes giving him record title to one-fourth interest in all of the property. The deed from Nancy to her daughter was not recorded until September 19,1995.
¶ 4. In Robberson 1, the chancellor:
confirmed title of the two acres of land and the home located on the subject property in Jewel Wheeler Burton and Edsel Burton with the remainder to Lena Shae Gray. In making this ruling, the chancellor relied on the last will and testament of Charles Wheeler to vest title to this part of the property in Jewel Wheeler Burton. The chancellor went on to state as follows:
An examination of the various other documents which have been introduced into evidence reveals that Gary Robberson owns an undivided one-forth (1/4) interest in the remaining acreage, i.e., the 49 3/4 acres less the home and two (2) acres upon which the home stands. The remaining undivided three-quarters (3/4) interest is owned by Lena Shea Gray, subject to a life estate owned by Jewel Wheeler Burton and Edsel Burton.
The chancellor declined to order the sale of the property and instead ordered that the property, not including the two acres on which the home sits or the home itself, be appraised. The chancellor ordered that once a value is assigned to the property Jewel Wheeler Burton was required to pay Robberson one-fourth of the appraised value of the property. Robberson was thereafter required by the order to convey by deed his one-fourth interest in the property to Jewel for life with the remainder interest to be vested in Lena Shae Gray.
Robberson, 790 So.2d at 227-28(¶ 5).
¶ 5. In Robberson 1, we concluded the following:
In attempting to fashion an equitable remedy, the chancellor erred in confirm *1269 ing title to the property and ordering an appraisal with directions for Jewel to pay Robberson an amount representing one-fourth interest in the real property. Although it was a commendable attempt to resolve this dispute, the statute does not provide for such a remedy. Because the whole property was the proper subject of partition (not diminished by the home and two acres), the chancellor was therefore required to partite the property either in kind or by sale. We agree on the present state of the record title that Lena Shae Gray owns three-fourths of the two tracts of land, subject to a life estate in Jewel and Edsel Burton, and Robberson owns a one-fourth interest in the two tracts of property, just as the chancellor ruled in regard to the land minus the home and two acres. Therefore, we remand this matter to the chancery court for a determination of whether a partition in kind is appropriate or whether a sale and division of the proceeds according to the respective interests of the parties is required.
In order to avoid any potential confusion over the effect of our ruling, we observe that there is, in Mississippi, no statute of limitations on the probate of a will. Further, there is authority for the proposition that one taking title to land with knowledge that an unprobated will exists may not obtain good title as against the named beneficiaries in the will. See Belt v. Adams, 125 Miss. 387, 87 So. 666, 668 (1921) (holding that a purchaser buying with knowledge of a will cannot assert a claim that would defeat the will). Whether these, or other related legal and equitable principles, may ultimately be brought to bear to resolve the title to the house and two acres is a matter that is not before the Court at this time. Those matters can only be litigated after the will of Charles Wheeler is successfully admitted to probate in the county where the land lies. Nothing we have decided in this opinion should be read as an attempt to foreshadow the outcome of future litigation affecting the title to this property flowing from the successful probate of the will, if such event should ever occur.
Id. at (¶¶ 13-14).
¶ 6. The appeal in Robberson 1 was in response to cause number 97-0207 which was initiated on July 1, 1997, by Robber-son seeking partition of the land. That cause was ruled upon by the chancery court on October 8, 1999. Robberson appealed that ruling and received a favorable outcome from this Court as stated above on July 7, 2001. The will of Charles Wheeler was probated on May 14, 2002. The validity of the will was never challenged within the two-year statute of limitations.
¶ 7. There were other actions pending during the time that matter was being appealed. On January 3, 1996, Nancy initiated cause number 96-0002 for the purpose of divorcing Fikes and challenging the validity of the deed executed from Nancy to Fikes and Fikes to Robberson. She voluntarily dismissed that action on February 13,1997. On February 18,1997, cause number 97-0038 was initiated by Nancy for the same purpose of the action which was voluntarily dismissed. Nancy was granted a divorce from Fikes on September 9, 1997. On December 2, 1999, cause number 99-0378 was filed by Rob-berson petitioning the court to quiet title to the land, declare his deed from Fikes valid, void the lis pendens notice that Nancy had filed against the property, and award Robberson damages and costs. A stay of cause numbers 97-0038 and 99-0378 was entered in March 2000, pending the decision of this Court concerning the Robberson 1 appeal. Additional delay may have been due to the numerous recusals *1270 filed by chancellors assigned to hear this matter.
¶ 8. On July 13, 2005, an order was entered by Itawamba County Chancellor Talmadge Littlejohn concerning all three of the then pending actions. The chancellor ruled that the deeds from Nancy to Fikes and Fikes to Robberson were void and quieted title to the property against Fikes and Robberson. The chancellor was well aware of this Court’s opinion in Rob-berson 1 but stated that the issue of whether the deed was void had to be resolved before a decision could be made on partitioning the land. We note that Fikes did not appear before the chancery court and failed to file any responses to the pleadings. Fikes is presently incarcerated with the Mississippi Department of Corrections.
¶ 9. Although the chancellor did not specifically state that Robberson was not a bona fide purchaser, we note that this finding was implicit. This implicit finding is evidenced by the chancellor’s discussion of the applicable factors for determining that issue and in his decision to void the deed from Fikes to Robberson. Indeed, the chancellor’s decision to void the deed from Fikes to Robberson demands the conclusion that the chancellor found that Robberson was not a bona fide purchaser for value without any notice of defect. Additional relevant facts are included in the discussion below.
¶ 10. Robberson appealed the decision of the chancery court arguing that he is an innocent purchaser for value without notice of any defect and that the chancellor erred in not confirming Robberson’s interest in the property. His appeal has been assigned to this Court.
DISCUSSION
¶ 11. We will not disturb the chancellor’s findings if they are supported by substantial evidence and are not manifestly wrong or clearly erroneous. Estate of Dykes v. Estate of Williams, 864 So.2d 926, 930(¶ 9) (Miss.2003). Questions of law are reviewed de novo. Id.

1. Sufficiency of Complaint

¶ 12. Robberson argues that Nancy’s complaint does not sufficiently state a cause of action against Robberson that could result in the possibility of Robberson losing a right to the property. He concludes that the decision of the chancellor was not supported by substantial evidence. He cites case law stating that, without evidence to the contrary, a conveyance acknowledging payment of valuable consideration is prima facie evidence that the grantee was a purchaser for valuable consideration. Mills v. Damson Oil Corp. 686 F.2d 1096 (5th Cir.1982).
¶ 13. Nancy, in addition to challenging the validity of the deed Nancy executed to Fikes, also requested that the court declare the deed from Fikes to Robberson void for lack of consideration. The evidence before the court included that Rob-berson paid to Fikes $3,300 for a one-fourth interest in the property. On December 8,1995, five months after receiving the deed from Fikes, Robberson, through his attorney, offered to sell the one-fourth interest to Jewel Burton for the sum of $20,000. The chancellor noted concern regarding the circumstances of Robberson’s actions. Robberson never went to look at the property and “virtually demand[ed]” selling the property back to Burton, who previously held title to the entire property with her husband.
¶ 14. In addition to Nancy’s complaint, Robberson himself requested that the chancellor declare him owner of a one-fourth interest in the land. The very basis of Robberson’s complaint required the *1271 chancellor to determine whether Robber-son was in fact the owner of the claimed interest. Having found that the deed from Nancy to Fikes was void, it was necessary and proper for the chancellor to examine whether Robberson had any interest in the property.

2. Validity of Deed

¶ 15. The chancellor’s decision that the deed from Nancy to Fikes was invalid is not challenged on appeal. Robberson relies upon case law in arguing that he was an innocent purchaser of the property and that the chancellor could not legally void the deed from Fikes to Robberson due to the invalidity of the deed to Fikes. Memphis Hardwood Flooring v. Daniel, 771 So.2d 924, 933 (Miss.2000); Collier v. Shell Oil Co., 534 So.2d 1015 (Miss.1988); Giesbrecht v. Smith, 397 So.2d 73, 77 (Miss.1981); Avant v. Whitten, 253 So.2d 394 (Miss.1971) (overruled in part on other grounds). Nancy argues that a voided deed cannot transfer any interest in real estate and that Robberson knew or should have known that the deed to Fikes was not valid.
¶ 16. Robberson argues that this case is analogous to Avant. In Avant, it was conceded that the persons purchasing land from the party that did not hold valid title “were innocent purchasers for value without notice.... ” Avant, 253 So.2d at 396. That case is of no value to the present discussion because whether or not Robber-son was an innocent purchaser for value without notice is the precise issue raised in this appeal.
¶ 17. Robberson also relies upon language in Collier where the Mississippi Supreme Court concluded that certain parties were bona fide purchasers, stating:
Shell and then Amoco are bona fide purchasers for value. At the time they took neither land records nor accessible law gave them notice that McLaurin’s illegitimate heirs had rights in his estate. As such, Shell, and then Amoco, acquired title against the world. Indeed, we have recognized that
every reasonable intendment should be made to support the titles of bona fide purchasers of real property, and that no equity can be any stronger than that of a purchaser who has put himself in peril by purchasing a title for a valuable consideration without notice of any defect in it.
Giesbrecht v. Smith, 397 So.2d 73, 77 (Miss.1981). How much stronger is that equity where the purchasers have relied to their detriment and engaged in ten years of successful drilling operations.
Collier, 534 So.2d at 1018. The holding in Collier and Giesbrecht supports Robber-son’s position if he is found to be a bona fide purchaser of the property. We now address whether Robberson meets the requirements of a bona fide purchaser.

3. Bona Fide Purchaser

¶ 18. Robberson properly acknowledges the requirements for protection as a bona fide purchaser as acquiring land for valuable consideration, in good faith, and without notice of any defect in title. Memphis Hardwood, 771 So.2d at 933(¶ 32). In Memphis Hardwood, a timber company was held to be a bona fide purchaser of timber. We applied the innocent purchaser analysis in a recent case. Wicker v. Harvey, 937 So.2d 983 (Miss.Ct.App.2006). In Wicker, we relied on Memphis Hardwood in stating that a real estate purchaser’s claim to be a bona fide purchaser for value without notice is “an affirmative defense and must be sustained by competent proof.” Id. at 992(¶ 27) (quoting Memphis Hardwood, 771 So.2d at 933(¶ 32)).
¶ 19. Claiming to be an innocent purchaser, Robberson must prove that he *1272 gave valuable consideration, the presence of good faith, and absence of notice of the adverse interest. We now address each of these subjects in the present case.

Valuable Consideration

¶ 20. Robberson testified that he paid Fikes $3,300 for the interest in the property, and cites case law to support his conclusion that this was adequate consideration. Buckley v. Garner, 935 So.2d 1030 (Miss.Ct.App.2005) (citing Mills, 686 F.2d 1096 at 1100). Nancy claims that the purchase price was “minimal” but does not expressly challenge that there was a complete lack of consideration for the purchase. Due to the lack of argument on this point, we conclude that the point is conceded that Robberson paid adequate consideration for the interest in the property. We do not reach the issue of whether $3,300 was adequate consideration here.

Good Faith and Absence of Notice

¶ 21. We now recite facts from the record to more fully communicate a concise sequence of events. Evidence was presented that Fikes and Robberson had a close relationship, discussed Nancy’s inheritance, and were both well acquainted with the situation of Nancy’s interest in the property. Robberson testified that he visited Nancy and Fikes as many as four times in a year. At times, Robberson was accompanied by his live-in girlfriend, Cly-tie, and ate dinner at Nancy’s house. Rob-berson and Fikes would spend time together alone and visited a lawyer’s office together.
¶ 22. There was also evidence that Fikes and Nancy had a very tumultuous relationship. Nancy testified that, when she refused to go out with Fikes after being abused, Fikes threatened to burn down her house. When she continued to refuse to go out with Fikes, her house burned down. Nancy suffered from injuries such as a broken cheek and nose in the year prior to Robberson purchasing the property. Nancy also suffered severe bruising that would be readily apparent by sight. Nancy testified that she did press charges against Fikes on one occasion and obtained a peace bond. After Nancy took that action, Fikes approached her at home and ripped out her phone lines to prevent Nancy from calling for help.
¶23. Evidence was presented to support the conclusion that Robberson was aware that Fikes abused Nancy. Fikes would sometimes stay at Robberson’s house when he had a fight with Nancy. Other times, Nancy would stay at the S.A.F.E. shelter to escape the abuse of Fikes. Nancy had confided in Robber-son’s girlfriend that Nancy wanted Lena to have the property and that Nancy was going to sign the property over to Lena. After that, Fikes threatened Nancy not to sign the property over to Lena, and then forced Nancy to sign a deed to him under duress. The evidence is uncontradicted that Nancy signed the deed over to Fikes due to coercion and duress.
¶ 24. Robberson testified that he knew the land he was purchasing from Fikes had recently been conveyed to Fikes by Nancy. Robberson testified that he was not aware that the two were married, and that he did not think it was unusual for Fikes to request $5,000 for a one-fourth interest in property valued at $60,000.
¶ 25. Robberson testified that he conducted a title search that went back fifty years but did not know who transferred the property to Nancy and did not “know those people” reflected in the title search. Nancy’s parents had purchased the land less than fifty years before Robberson’s title search. Less than five months after purchasing the property interest from Fikes, Robberson attempted to sell the property back to Nancy’s mom at a price *1273 of over six times what Robberson had paid. The letter he sent to Ms. Jewel Burton acknowledged that Robberson knew both she and Nancy’s daughter, Lena, also held an interest in this property.
¶ 26. Robberson argues that good faith was present in his transaction with Fikes. He argues that the testimony was uncon-tradicted that he had “absolutely no idea of any alleged threats between Ricky Fikes and his wife.” Our analysis is guided by the definition of good faith, defined in part as “absence of intent to defraud or to seek unconscionable advantage.” Black’s Law Dictionary, 701 (7th ed.2000). Notice is charged when:
in respect to a matter in which he has a material interest, a person has knowledge of such facts as to excite the attention of a reasonably prudent man and to put him upon guard and thus to incite him to inquiry, he is chargeable with notice, equivalent in law to knowledge, of all those further relevant facts which such inquiry, if pursued with reasonable diligence, would have disclosed.
Wicker, 937 So.2d at 993(¶ 30) (quoting Crawford v. Brown, 215 Miss. 489, 503, 61 So.2d 344, 350 (1952)); see also Beauchamp v. McLauchlin, 200 Miss. 83, 25 So.2d 771 (1946) (stating that when a purchaser has knowledge of circumstances that would put a prudent person acting in good faith on inquiry, he is chargeable with actual notice of the facts the inquiry would have disclosed).
¶ 27. In the present case, there is evidence to support the conclusion that information was passed between Clytie, Rob-berson, and Fikes, and that Robberson knew Fikes abused Nancy. There was evidence to conclude that a reasonably prudent person with the knowledge Rob-berson possessed about the situation would have further inquired how Fikes obtained the property from Nancy. There is sufficient evidence to support the ruling of the chancellor that a court of equity would protect Nancy’s right to the property. Robberson has failed to meet his burden of proof to demonstrate he acted in good faith and was without notice of an adverse interest in the property.
¶ 28. THE JUDGMENT OF THE ITAWAMBA COUNTY CHANCERY COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
KING, C.J., LEE AND MYERS, P.JJ., GRIFFIS, ISHEE AND ROBERTS, JJ., CONCUR. IRVING, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY CHANDLER AND BARNES, JJ.